**Alfred BROWN, William King and Willie James Mallett, Individually and on behalf of all others similarly situated, Plaintiffs-Appellants,**

v.

**Robert R. SIBLEY, etc. et al., Defendants-Appellees.**

No. 80–3127.

United States Court of Appeals, Fifth Circuit.

Unit A

July 16, 1981.

Rehearing En Banc Denied Sept. 18, 1981.

Barry H. Powell, Jackson, Miss., for plaintiffs-appellants.

Jim R. Bruce, Sp. Asst. Atty. Gen., C. Bradshaw Farber, Asst. Atty. Gen., Jackson, Miss., for defendants-appellees.

Before INGRAHAM, POLITZ and WILLIAMS, Circuit Judges.

INGRAHAM, Circuit Judge:

Named plaintiffs, visually impaired employees of Mississippi Industries for the Blind (MIB), brought a class action against that state agency and its officials alleging employment discrimination violative of sections 503 and 504 of the Rehabilitation Act of 1973, as amended (the Act), 29 U.S.C. §§ 793, 794 (Supp. III 1979), and the fourteenth amendment to the United States Constitution. The district court held that plaintiffs had no private cause of action under section 503 of the Act and ruled against plaintiffs on the merits of their individual and class discrimination claims under section 504 of the Act and under the fourteenth amendment. We affirm so much of the judgment as denies plaintiffs any private cause of action against these defendants under section 503, whether directly under that section or indirectly through that section coupled with 42 U.S.C. § 1983 (1976). We also affirm so much of

the judgment as holds that plaintiffs failed to prove unconstitutional discrimination violative of the fourteenth amendment. Because we conclude that named plaintiffs had no standing to bring this suit under section 504, either individually or as a class action, we vacate the remainder of the judgment and remand that portion of the case to the district court with instructions to dismiss.

I.

This cause was filed as a class action in December 1978 by named plaintiffs Alfred Brown, William King, and Willie Mallet. Named plaintiffs alleged employment discrimination against visually impaired employees at MIB. They specifically alleged that they had been denied promotion to supervisory and nonmanual labor positions at MIB because of their handicaps. They sought relief in the form of promotions to supervisory positions, back pay, damages, and attorney fees and costs. After discovery the district court certified a plaintiff class in June 1979 and defined it as follows:

> All visually handicapped individuals qualified for supervisory and non-manual labor positions at Mississippi Industries for the Blind, but who solely because of their visual handicap, have been, are being, or will be prevented by defendants from advancing to such positions.[1]

In July 1979 defendants moved to dismiss the cause on the grounds, among others, that plaintiffs had no private right of action under section 503 of the Act and that section 504 of the Act was not applicable to the employment circumstances of these plaintiffs. In August 1979 the district judge denied defendants' motion, specifically finding that plaintiffs had stated a claim for relief under these two sections of the Act. The cause moved to trial under that

---

1. Persons with visual impairment experience varying degrees of disability. For administrative and recordkeeping purposes, including eligibility to qualify for certain federal procurement contracts, MIB uses the following classifications: totally blind; legally blind (eyesight in best eye less than 20/200 corrected); visually handicapped (eyesight in best eye less than 20/70 corrected). It is clear from the record that, in defining the certified class, the district court did not use the term "visually handicapped" in this specialized sense. Rather, the district court included in the class the visually handicapped, the legally blind, and the totally blind. *See also* note 7 *infra*.

order. By consent of the parties, trial was held before a United States Magistrate. In February 1980 the district judge adopted the findings of fact and conclusions of law rendered by the magistrate and entered final judgment. The court held that plaintiffs had no private cause of action under section 503 of the Rehabilitation Act of 1973 and that they had failed to prove their claims of discrimination under section 504 of the Act and under the fourteenth amendment. Plaintiffs appeal that final judgment pursuant to 28 U.S.C. § 1291 (1976).

## II.

MIB was established by the Mississippi Legislature for the purpose of providing training and employment to visually impaired persons. It receives no state appropriation or funding for its production operations. Instead, it operates almost entirely from the profits generated by the sale of its manufactured products to private businesses and through government procurement contracts. Employees in the production departments of MIB manufacture mail bags, postal straps, aprons, sponges, mops, brooms, mattresses, and havelocks. Approximately two-thirds of the sales of these products are made pursuant to federal procurement contracts allocated through the National Industries for the Blind.

MIB also operates certain programs that receive, via the Mississippi State Department of Public Welfare, funding that originates with the United States Department of Health and Human Services. There are at least two programs that seem to come within this description, namely, the Social Services Program and the Day Care Center. These programs are designed to meet various special needs of visually impaired persons generally, and the needs of employees of MIB and their children.[2]

Plaintiffs Brown, King, and Mallet are employed in certain of the production de-partments at MIB. Brown, an employee since 1973 has been trained to operate every machine in the broom department, although he has also worked in the mattress and sponge departments. King, an employee since 1975, has spent most of his years in the sewing department, although he has also worked in the broom and mop departments. Mallet, who began part-time in 1973, has worked in the broom department, as well as in the sponge, candle, belt, and mattress departments. In the spring of 1977, they each applied for the position of supervisor of the broom department, which was soon to become vacant due to the retirement of the existing supervisor. The position was ultimately filled by a sighted employee having respectively seven, nine, and eleven more years of full-time seniority than the three named plaintiffs.

## III.

We first address named plaintiffs' claims under section 503 of the Act. This analysis breaks down into two components: first, whether named plaintiffs have a private cause of action directly under section 503; and second, whether in the absence of any direct cause of action under that section named plaintiffs can nevertheless bring their action under 42 U.S.C. § 1983 (1976) for a deprivation of rights secured by section 503.

■ The first prong of this section 503 analysis is controlled by our recent decision in *Rogers v. Frito-Lay, Inc.*, 611 F.2d 1074 (5th Cir.), *cert. denied*, —— U.S. ——, 101 S.Ct. 246, 66 L.Ed.2d 115 (1980), decided after the district court entered its final judgment in the instant case. In *Rogers* we expressly held that by enacting section 503 Congress did not impliedly authorize a direct private cause of action through which plaintiffs such as these could bring suit in federal district court. The inquiry along this prong of the section 503 analysis need

---

2. There are also at least two satellite workshops that MIB operates in remote cities. Although it is evident from the record that certain production activities at these satellite workshops generate manufactured products for sale, the full range of the operations there remains unclear. Other aspects of federal funding previously or presently received by MIB are discussed in detail in Part VI *infra*.

go no farther. We are bound by the *Rogers* panel.

Named plaintiffs contend that even absent a direct private cause of action under section 503, they can nonetheless bring their suit under 42 U.S.C. § 1983 (1976) for deprivation under color of state law of rights secured to them by section 503. This contention is posited upon the Supreme Court's opinion in *Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), which held that section 1983 can be employed by an aggrieved person to secure redress for the deprivation, under color of state law, of rights secured by federal statutes as well as rights secured by the federal Constitution.

It is essential, however, to focus clearly on the language of section 1983. As relevant here, that section provides that "[e]very person who, under color of [state law], subjects ... any citizen of the United States ... to the deprivation of any rights ... secured by [federal] laws" may be held liable to the injured party. First, we must determine what right, if any, section 503 confers upon these named plaintiffs and others similarly situated. Next, we must determine whether plaintiffs suffered a deprivation of that right at the hands of someone acting under color of state law.

The language of section 503 speaks for itself. The right secured to a handicapped person by section 503 is that of filing with the Department of Labor a complaint stating his belief that a "contractor has failed or refuses to comply with the provisions of his contract with the United States, relating to employment of handicapped individuals." Section 503(b), 29 U.S.C. § 793(b)

(1976). The Department of Labor has promulgated an extensive set of regulations that provide, *inter alia*, for agency investigation, negotiation, conciliation, and, if necessary, judicial enforcement of agency sanctions. *See* 41 C.F.R. §§ 60–741.1 to 60–741.54 (1980).[3] When Congress has provided a specific remedy, the federal judiciary should not expand that remedy beyond the limits where Congress was prepared to go. *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 19–20, 100 S.Ct. 242, 247, 62 L.Ed.2d 146 (1979); *Ryan v. Ohio Edison Co.*, 611 F.2d 1170, 1177 (6th Cir. 1979); *Meyerson v. Arizona*, 507 F.Supp. 859, 861 (D.Ariz.1981). *Cf. Rogers v. Frito-Lay, Inc.*, 611 F.2d at 1080 (section 503 obligates those who control federal contracts to make and enforce contracts containing the requisite clause; the handicapped may have simply the right to petition those who administer federal contracts to perform their duty); *Simpson v. Reynolds Metals Co.*, 629 F.2d 1226, 1244 (7th Cir. 1980) (Congress apparently intended the filing of a complaint with the Department of Labor to be the appropriate means for a private individual to enforce the contractual obligations created by section 503).

It would appear that the only section 503 deprivation of which named plaintiffs could conceivably complain under section 1983—requiring as the latter section does (1) a state official, (2) who was acting under color of state law—would be the hypothetical situation in which MIB executive personnel interfered in some way with named plaintiffs' right to file a complaint with the Department of Labor.[4] There is

**3.** In fact, named plaintiffs have already exercised their rights afforded by § 503(b). In October 1978 Brown, King, and Mallet filed administrative complaints under §§ 503 and 504 with the Department of Labor and with the Department of Health, Education, and Welfare (HEW). The Department of Labor conducted a three-day on-site investigation of the complaints in February 1979. In March 1979, HEW advised plaintiffs by letter that it was deferring the handling of the complaints to the Department of Labor and closing its files on the matter. In April 1979 the Department of Labor issued its investigative findings, concluding

that named plaintiffs had not been discriminated against. By then, named plaintiffs' class lawsuit was almost four months old.

**4.** It would further appear that named plaintiffs cannot use § 1983 to enforce the obligation of some Department of Labor official to fulfill his statutory duty to ascertain that entities contracting with the federal government include in their contracts provisions for affirmative assistance to handicapped persons seeking or holding employment with those entities. This is so because the hypothetical official is a federal official and if he deprives named plaintiffs of any right at all, he does so under color of

not the faintest allegation or showing in the present case that any of the MIB personnel interfered in any way with named plaintiffs' right to file such a complaint. Therefore, named plaintiffs cannot bring under 42 U.S.C. § 1983 (1976) their action alleging employment discrimination by MIB violative of section 503 of the Rehabilitation Act of 1973, 29 U.S.C. § 793 (Supp.III 1979).

## IV.

We next address the constitutional claims.[5] Named plaintiffs allege on behalf of themselves and the certified class discriminatory treatment at the hands of MIB violative of the fourteenth amendment and 42 U.S.C. § 1983 (1976).[6] First, they allege the existence of an unwritten policy at MIB to the effect that the visually impaired cannot work in supervisory and nonmanual labor positions.[7] This policy is said to constitute an "irrebuttable presumption" in violation of the due process clause of the fourteenth amendment. *See generally Cleveland Board of Education v. LaFleur*, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974); *Vlandis v. Kline*, 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973).

Whatever the present vitality of the "irrebuttable presumption" doctrine as distinct from traditional equal protection concerns, *see generally Elkins v. Moreno*, 435 U.S. 647, 658–61, 98 S.Ct. 1338, 1345–47, 55 L.Ed.2d 614 (1978); J. Nowak, R. Rotunda & N. Young, Handbook on Constitutional Law 497 (1978), we agree with the district court that there is no such presumption operative at MIB. Visually impaired persons have held supervisory and nonmanual labor positions at MIB in the past and continue to do so today. Even *if* there were some "presumption" as to the inability of these people to hold such positions, it obviously is "rebuttable," as demonstrated by the past and present employment of the visually impaired in those positions.

Second, named plaintiffs allege that MIB's treatment of the visually impaired as being unfit for supervisory and nonmanual labor positions creates "an arbitrary, discriminatory, and unreasonable classification" that violates their rights to equal protection of the laws. An examination of the record indicates that in making its promotion decisions for supervisory and nonmanual labor positions MIB is concerned with the safety of its employees and with the workmanlike performance of the contractual relationships from which it earns income to sustain its operations. Named plaintiffs do not appear to contend that MIB's alleged policy bears no rational relationship to those legitimate governmental concerns. Rather, they contend that "the physically handicapped are a suspect classification of our

---

federal law, not state law. Since § 1983 applies to persons who deprive people, under color of state law, of federally secured rights, named plaintiffs would have no cause of action under § 1983 against the Department of Labor official. Thus, even after *Thibotout*, named plaintiffs can find no back door through § 1983 into the courthouse whose front door is closed to them by *Rogers*.

5. We invert the normal sequence of consideration and deal with the constitutional claims before concluding our treatment of the remaining § 504 statutory claims in view of our holding in Part V *infra* that these named plaintiffs had no standing to bring those statutory claims and our attendant disposition resulting in their dismissal.

6. MIB does not challenge named plaintiffs' characterization of itself as a state agency for purposes of the state action requirement of § 1983.

7. Named plaintiffs have advised this court that they do not feel they can overturn the adverse findings of the district court with respect to their individual claims. In their view, the proof below demonstrates that it is those visually impaired persons who are handicapped to the extent that they cannot read or drive automobiles who are discriminated against by MIB. Accordingly, named plaintiffs purport to pursue relief on this appeal on behalf of only those members of the plaintiff class who are legally and totally blind. As authority for the proposition that we can limit our review to some subset of the certified class never considered or certified by the district court, named plaintiffs cite *Califano v. Yamasaki*, 442 U.S. 682, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979). In the light of our disposition of the constitutional claims with respect to the class that the district court did certify, we neither reach nor express any opinion on this proposition.

population and any state discrimination against the handicapped must be subjected to the strict scrutiny test under the Equal Protection Clause of the Fourteenth Amendment."

■ Named plaintiffs' request for strict judicial scrutiny under the equal protection clause is misplaced. No court has ever declared that handicapped persons constitute a suspect class for purposes of equal protection analysis, and we decline to do so today. Since neither can they claim the benefits of a suspect classification nor were they subjected to the deprivation of any fundamental constitutional right, *see San Antonio Independent School District v. Rodriguez*, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973), the only inquiry is whether MIB's alleged classification scheme is "rationally related to the [state agency's] objective." *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 315, 96 S.Ct. 2562, 2568, 49 L.Ed.2d 520 (1976). "The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the [state agency's] objective." *McGowan v. Maryland*, 366 U.S. 420, 425, 81 S.Ct. 1101, 1104, 6 L.Ed.2d 393 (1961).

Analyzing their claims under the rational relationship test, we find that MIB's conduct does not offend the fourteenth amendment. After noting the various supervisory and nonmanual labor positions formerly or currently held by visually impaired persons, the district court found that certain aspects of the remaining supervisory and nonmanual labor positions involved detailed reading and writing, driving of vehicles, quality control duties, pattern cutting skills, or careful inventorying of materials. These findings were not clearly erroneous. *See* Fed.R.Civ.P. 52(a); *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1947). MIB's underlying assumption that sight is required for certain of the skills demanded of its supervisory and nonmanual labor employees is certainly not irrational: in terms of likelihood, MIB reasonably could assume that a sighted person could more safely and proficiently perform those skills than could one with a disabling visual impairment. MIB "is not compelled to verify logical assumptions with statistical evidence" in order to pass muster under the rational relationship test. *Hughes v. Alexandria Scrap Corp.*, 426 U.S. 794, 812, 96 S.Ct. 2488, 2499, 49 L.Ed.2d 220 (1976).

More fundamentally, named plaintiffs failed to establish that MIB actually classifies visually impaired persons as a group as being unfit for supervisory and nonmanual labor positions. The district court concluded that the failure of these named plaintiffs to secure the supervisory position they sought was not due to discrimination by MIB on the basis of their respective handicaps, and that MIB had not engaged in a pattern or practice of failure to promote the otherwise qualified visually impaired to supervisory and nonmanual labor positions. These conclusions were not erroneous.[8] Like their due process claims, the equal protection claims of named plaintiffs and the class they represent must fail.

## V.

We now turn to named plaintiffs' claims under section 504 of the Act. The first prong of the inquiry here is whether there exists a private cause of action directly under section 504. Until recently, the short-lived law on this question in this circuit held that such a direct private cause of action did exist. In *Camenisch v. University of Texas*, 616 F.2d 127, 135 (5th Cir.

---

**8.** Surprisingly named plaintiffs, but not surprisingly defendants MIB *et al.*, request us to test the district court's finding of the absence of discrimination by the clearly erroneous standard. The law in this circuit, however, is that although the clearly erroneous standard applies to findings of subsidiary facts, it does not apply to findings of ultimate facts, *e. g.*, discrimination *vel non*. "A finding of discrimination or nondiscrimination falls into the category of ultimate fact; therefore we must make an independent determination of the allegations of discrimination. In the process we examine the record to see if the ultimate finding is supported by requisite subsidiary facts." *Thompson v. Leland Police Dept.*, 633 F.2d 1111, 1112 (5th Cir. 1980) (citations omitted).

1980), an appeal from the granting of a preliminary injunction conditioned by a bond, we held that private individual suits to enforce section 504 rights can be brought without previous resort to administrative remedies. On appeal, however, the Supreme Court vacated as moot the judgment of this court concerning the propriety of the preliminary injunction and remanded the case to the district court for trial on the merits of Camenisch's claim. *University of Texas v. Camenisch,* —— U.S. ——, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1980). There is thus no Fifth Circuit precedent clearly controlling the outcome on this issue. Since the Supreme Court did not address the question of the existence *vel non* of a direct private cause of action under section 504, however, we assume *arguendo* that such a right does exist.[9]

The existence of that right, however, does not end the analysis. The second prong of the present inquiry must determine whether *these* plaintiffs can bring *their* action under section 504. For reasons presently to be developed, we conclude that these named plaintiffs have not sustained the injury that Congress intended to prevent when enacting section 504. Thus, even assuming *arguendo* that a direct private cause of action exists under that section, these plaintiffs had no standing to bring such an action.

This circuit previously has not addressed the exact contours that a section 504 suit may take. Our key inquiry in this regard is whether receipt of federal financial assistance by certain programs administered by MIB brings all of the operations of MIB, including the production departments where named plaintiffs are employed, within the reach of the discrimination prohibitions of section 504. After analyzing the relevant statutory language and legislative history and our case law under analogous statutes, we find persuasive reasons for concluding that the receipt of federal financial assistance by a multiprogram entity, for specific application to certain programs or activities, does not, without more, bring all of those multiple programs or activities within the reach of section 504.

To establish this proposition, we begin with the language of section 504. In pertinent part, that section addresses itself to discrimination "under any program or activity receiving federal financial assistance." The use of the terms chosen to denote the recipients of the federal financial assistance—*i. e.,* "programs" and "activities"—connotes some subset or subsets of a greater entity. The State of Mississippi, for example, receives "federal financial assistance," in the generic sense of those words, but no one would contend that section 504 therefore reaches all proprietary and governmental activities of the State of Mississippi. Similarly, although MIB does receive some federal financial assistance, named plaintiffs' section 504 claims must address themselves to those MIB programs or activities that are so funded.

This conclusion is buttressed by the virtual identity between the discrimination prohibitions of section 504 and those of Title VI[10] and Title IX.[11] The prohibitory language of section 504, as codified, reads in pertinent part as follows:

> No otherwise qualified handicapped individual in the United States . . . shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

---

**9.** In deference to the vacation of the panel opinion by the Court, we express no views on the reasoning relied upon by the *Camenisch* panel in finding a direct private cause of action under § 504. We note, however, that the *Camenisch* panel reached the same conclusion respecting the direct private cause of action as that reached by our sister courts in the Second, Third, Fourth, Seventh, and Eighth Circuits. *See Camenisch,* 616 F.2d at 131. We therefore are disposed, for the limited purpose of our disposition in this case, to assume the existence of such a right.

**10.** Civil Rights Act of 1964, 42 U.S.C. §§ 2000d to 2000d–4 (1976).

**11.** Education Amendments Act of 1972, 20 U.S.C. §§ 1681–1686 (1976).

29 U.S.C. § 794 (Supp. III 1979). The prohibitory language of Title VI, as codified, reads as follows:

> No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

42 U.S.C. § 2000d (1976). The prohibitory language of Title IX, as codified, reads in pertinent part as follows:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.

20 U.S.C. § 1681 (1976).

The overwhelming similarity of these quoted passages is no accident. Congress expressly modeled the discrimination prohibition contained in section 504 after the prohibitory language contained in Title VI and Title IX. *See* S. Rep. No. 93–1297, 93d Cong., 2d Sess. (1974), *reprinted at* [1974] U.S.Code Cong. & Ad.News 6373, 6390–91. Moreover, in 1978 Congress added section 505 to the Rehabilitation Act of 1973,[12] expressly affording to handicapped persons suffering discrimination under section 504 the rights, remedies, and procedures of Title VI. *See* 29 U.S.C. § 794a(a)(2) (Supp. III 1979).

We turn then to our case law developed under Title VI and Title IX for guidance in explicating section 504. Addressing the permissible scope of a discrimination suit under Title VI in *Board of Public Instruction of Taylor County v. Finch*, 414 F.2d 1068 (5th Cir. 1969), we explained Congress' intent in the following manner:

> But there will also be cases from time to time where a particular program, within a state, within a county, within a district, even within a school . . . is effectively insulated from otherwise unlawful activities. Congress did not intend that such a

program suffer for the sins of others. HEW was denied the right to condemn programs by association. The statute prescribes a policy of disassociation of programs in the fact finding process. Each must be considered on its own merits to determine whether or not it is in compliance with the Act. . . . [P]rograms are not condemned enmasse [sic] or in gross, with the good and the bad condemned together, but the termination power reaches only those programs which would utilize federal money for unconstitutional ends. Under this procedure each program receives its own "day in court."

*Id.* at 1078.

We also have previously addressed the reach of the discrimination prohibitions contained in Title IX. In *Dougherty County School System v. Harris*, 622 F.2d 735 (5th Cir.), *petition for cert. filed*, 49 U.S.L.W. 3495 (U.S.Dec. 22, 1980), we struck down certain antidiscrimination regulations promulgated by HEW pursuant to Title IX. At issue was the application of the regulations to a school system that paid a salary supplement to industrial arts teachers but not to home economics teachers. We characterized the regulations as follows:

> [They] are not limited to employees whose compensation is defrayed in whole or in part by federal assistance or even to those who work in programs receiving federal aid or with students who are federally assisted. Instead, they apply to all employees of the entire school system so long as any program or activity of that school receives any federal assistance.

*Id.* at 736. The overbreadth of the regulations was fatal. We stated that we could not "find sanction in the statute for [the Secretary's] conclusion that any discrimination in an entire school system so taints the system as to permit termination of all federal aid even though federally assisted programs are administered impeccably." *Id.* at 737.

---

**12.** *See* Rehabilitation Comprehensive Services and Developmental Disabilities Amendments of 1978, Pub.L.No. 95–602, § 120, 92 Stat. 2955, 2983.

As a confirmatory matter, we note the reach of the regulations promulgated "to effectuate section 504 of the Rehabilitation Act of 1973, which is designed to eliminate discrimination on the basis of handicap in any program or activity receiving Federal financial assistance." 45 C.F.R. § 84.1 (1980). Those regulations define the term "Federal financial assistance" as "any grant, loan, contract (*other than a procurement contract* . . .), or any other arrangement by which the Department provides or otherwise makes available assistance. . . ." *Id.* § 84.3(h) (emphasis added). *Cf. Rogers v. Frito-Lay, Inc.,* 433 F.Supp. 200, 204 (S.D. Tex.1977) (the term "federal financial assistance" as used in section 504 does not comprehend government procurement contracts), *aff'd on other grounds,* 611 F.2d 1074 (5th Cir. 1980).

■ Accordingly, on the basis of the language of section 504 and its legislative history, and on the strength of analogies to Title VI and Title IX, we hold that it is not sufficient, for purposes of bringing a discrimination claim under section 504, simply to show that some aspect of the relevant overall entity or enterprise receives or has received some form of input from the federal fisc. A private plaintiff in a section 504 case [13] must show that the program or activity with which he or she was involved, or from which he or she was excluded, itself received or was directly benefited by federal financial assistance.[14]

### VI.

With the foregoing principles in mind, we turn now to an examination of the pleadings and record in this case to ascertain whether the action can be maintained under section 504 of the Act. In their complaint, named plaintiffs assert two grounds upon which they claim entitlement to bring their section 504 claims. First, they assert that "MIB receives funds from the U.S. Department of Health, Education, and Welfare [now Health and Human Services] through Title XX of the Social Security Act and Vocational Rehabilitation Act funds." Second, they assert that "[f]ederal financial assistance was also used to construct the plant in Jackson, [Mississippi] presently housing MIB." Treating the pleadings with liberality, as we are required to do under the Federal Rules of Civil Procedure, we have combed the entire record, including the depositions, affidavits, and transcript, in order to glean all evidence of any receipt of federal funds that might bring MIB within the reach of section 504 with respect to these named plaintiffs.

MIB clearly receives federal financial assistance in the form of Title XX funds. These funds are used to sustain the Social Services Program and the Day Care Center. There is no allegation, however, that any of the named plaintiffs has ever been excluded from participation in, been denied the benefits of, or been subjected to discrimination under either of those programs, whether solely by reason of his handicap or for any other reason. MIB also received federal financial assistance at least from 1977 until the 1979 trial in the form of antirecession funds channeled through the Governor's Office and expended for the purpose of establishing a satellite workshop in Greenville, Mississippi. Again, there is no allegation that named plaintiffs had any connection with this program or that they suffered discrimination thereby in any manner.

In 1970 MIB applied through the Mississippi Vocational Rehabilitation for the Blind to HEW for a grant to fund the

---

**13.** This assumes, of course, that a direct private cause of action does exist under § 504. See note 9 *supra* & accompanying text.

**14.** This burden should be slight. Contrary to popular belief in certain quarters, federal financial assistance does not materialize out of thin air. Requests in writing must be submitted by the applicant entity to some federal funding authority with respect to a proposed program or activity. If federal financial assistance is approved for the particular program or activity, it cannot be gainsaid that recordkeeping requirements will be imposed on the entity responsible for the expenditure of the federal funds. Discovery of the receipt and utilization of those funds with respect to particular programs and activities will be the least of plaintiffs' burdens.

establishment of a counseling service at the plant and to expand existing warehouse capacity. The expansion project was approved and completed. Since then, MIB has neither applied for nor received any federal funding for plant or warehouse expansion. The counseling program was also approved, but was funded for only one year. These events antedated the alleged discriminatory failure to promote challenged here by named plaintiffs and thus in this case cannot be considered federal financial assistance within the meaning of section 504. We take for granted, for example, that a building constructed with W.P.A. funds on a site cleared by C.C.C. laborers, absent express contractual commitments obligating the recipient entity, cannot without more bring within section 504 the activities conducted inside the building. Named plaintiffs have not so much as hinted at any such contractual commitments nor have they asserted any connection whatsoever between the defunct counseling service or the construction project and MIB's allegedly discriminatory refusal to promote them to supervisor of the broom shop.

At some point three and one-half to four years prior to trial, Mississippi Vocational Rehabilitation for the Blind channeled federal matching funds to MIB for the purpose of purchasing secondhand equipment to set up a candle manufacturing operation. The project was unable to earn a profit and had been terminated prior to the trial of this case. If federal funds had been flowing to this project at the time the discrimination alleged in this case was perpetrated, they might have qualified as federal financial assistance.[15] If express contractual assurances of nondiscrimination had been extracted from MIB in return for the receipt of the funds, they might have qualified thereby as federal financial assistance.[16] Named plaintiffs have not alleged any such continuity of funding or express assurance, nor have they asserted any connection whatsoever between the funding or operation of the defunct candle department and

their alleged discrimination at the hands of MIB through failure to promote them to supervisory or nonmanual labor positions.

The only other funds mentioned in the record that remotely resemble federal financial assistance are payments by the Mississippi Vocational Rehabilitation for the Blind to MIB during a nine month period in 1977 for training visually impaired workers on site at MIB, apparently in lieu of their receiving training from the payor agency prior to applying for employment at MIB. These payments were terminated more than one year prior to the filing of this lawsuit. There is no indication whether these were state funds, federal funds, or a mixture of both. There were no allegations whatsoever that any nondiscrimination assurances were made by MIB in return for the receipt of these payments.[17] Nor, for that matter, did named plaintiffs allege or show any connection whatsoever between the operation of the job training program funded by the payments and the allegedly discriminatory refusal of MIB to promote named plaintiffs to supervisory and nonmanual labor positions. These 1977 payments from Mississippi Vocational Rehabilitation for the Blind do not qualify as federal financial assistance under section 504 for purposes of this lawsuit.

■ In short, named plaintiffs have pointed to no program or activity both with respect to which MIB is a recipient of federal financial assistance, within the meaning of that term as used in section 504, and with respect to which they have alleged or shown that they were excluded from participation, denied any benefits, or subjected to discrimination. *Cf. Simpson v. Reynolds Metals Co.*, 629 F.2d 1226, 1231–32 (7th Cir. 1980) (plaintiff's failure to demonstrate any nexus between his discharge and the federal assistance requires affirmance of the district court's dismissal of his claim under section 504). There may exist other visually impaired individuals who have suffered

---

15. *See generally* 45 C.F.R. § 84.5(b)(3) (1980).

16. *See generally* 45 C.F.R. § 84.5(b)(2) (1980).

17. *See generally* 45 C.F.R. § 84.5(b)(3) (1980).

impermissible discrimination in some program or activity with respect to which MIB was the recipient of federal financial assistance, but these named plaintiffs have failed to make even the threshold showing that they suffered the particular injury that Congress intended section 504 to prevent.

## VII.

We turn finally to a consideration of the district court's certification as a class action of that portion of this cause brought under section 504 of the Rehabilitation Act. Because we conclude that named plaintiffs lacked standing to bring their section 504 claims, we vacate so much of the judgment below as held against the class on the section 504 claims and remand to the district court with instructions to dismiss.

■ Inclusion of class action allegations in a complaint does not relieve a plaintiff of himself meeting the requirements for constitutional standing, even if the persons described in the class definition would have standing themselves to sue. If the plaintiff has no standing individually, no case or controversy arises. This constitutional threshold must be met before any consideration of the typicality of claims or commonality of issues required for procedural reasons by Fed.R.Civ.P. 23.

■ As we have seen, named plaintiffs were not involved with or excluded from any program or activity for which MIB received federal financial assistance for purposes of section 504. They are not members of some potential class of people who were excluded from participation in, denied the benefits of, or otherwise subjected to discrimination under programs or activities covered by section 504. Thus, in alleging discrimination under section 504, named plaintiffs are attempting to represent a class of which they are not members. "A person simply cannot represent a class of which he is not a member." *Long v. District of Columbia,* 469 F.2d 927, 930 (D.C.Cir.1972). *See Kauffman v. Dreyfus Fund, Inc.,* 434 F.2d 727, 734 (3rd Cir. 1970).

Chief Justice Burger has analyzed the situation in the following terms:

[A] named plaintiff cannot acquire standing to sue by bringing his action on behalf of others who suffered injury which would have afforded them standing had they been named plaintiffs; it bears repeating that a person cannot predicate standing on injury which he does not share. Standing cannot be acquired through the back door of a class action.

*Allee v. Medrano,* 416 U.S. 802, 828–29, 94 S.Ct. 2191, 2206–07, 40 L.Ed.2d 566 (1974) (Burger, C. J., concurring).

In a single-claim action, because individual standing requirements constitute a threshold inquiry, the proper procedure when the class plaintiff lacks individual standing is to dismiss the complaint, not to deny the class for inadequate representation or to allow other class representatives to step forward. This dismissal should take place before class certification issues are ever reached. *See* 1 Newberg on Class Actions § 1080, at 138 (1977). At that stage of the proceedings, no preclusive effects attach so as to bar a subsequent action by other class members who themselves have standing to represent the putative class of discriminatees. Here, however, where three distinct claims were asserted in the same cause of action, whether the district court should have dismissed any claims that named plaintiffs had no standing to bring or for which there existed no private cause of action, or whether instead the court should have entertained an amended complaint setting up separate subsets of the proposed class, is a closer question and one we need not decide here.

In the present posture of this case, we elect to vacate so much of the judgment below as rules adversely to named plaintiffs and the certified class on the merits of the section 504 claims and remand that portion of the case to the district court with instructions to dismiss. If visually impaired persons other than these named plaintiffs have suffered impermissible discrimination in some program or activity with respect to

which MIB was the recipient of federal financial assistance within the meaning of section 504, they are not precluded from asserting any claims they may have under that section.[18]

## VIII.

To summarize, we hold three things. First, we affirm the district court's denial of a direct private cause of action under section 503 of the Rehabilitation Act of 1973, and further hold that named plaintiffs cannot bring as a private action under 42 U.S.C. § 1983 (1976) either their individual claims or those of the class alleging employment discrimination violative of section 503. Second, we affirm the district court's judgment on the constitutional claims and hold that MIB's alleged discrimination against named plaintiffs and the class they represent was not conduct violative of either the due process clause or the equal protection clause of the fourteenth amendment to the United States Constitution. Third, we hold that named plaintiffs lacked standing to bring both their individual and the class claims of discrimination under section 504 of the Act, since they were unable to make even the threshold showing that they were involved with or excluded from programs or activities that received or were directly benefited by federal financial assistance.

AFFIRMED in part; VACATED in part and REMANDED with instructions.

---

**18.** Again, this assumes that a direct private cause of action does exist under § 504. See note 9 *supra* & accompanying text.