Dennis GALLAGHER, Next Friend Miriam Gallagher, Plaintiff-Appellant,

v.

PONTIAC SCHOOL DISTRICT, the Oakland Co. Intermediate School Dist.; Clifford Coit, in his official capacity and Individually; Farmington School District, Defendants-Appellees.

No. 85–1134.

United States Court of Appeals, Sixth Circuit.

Argued Sept. 30, 1986.

Decided Dec. 16, 1986.

Jon R. Garrett (argued), Garrett and Rogers, P.C., Detroit, Mich., for plaintiff-appellant.

Craig A. Anderson (argued), Detroit, Mich., David P. Smith (argued), Bloomfield, Mich., William W. Decker, Jr., Troy, Mich., Bryan Cermak (Argued), for defendants-appellees.

Before KEITH and WELLFORD, Circuit Judges, and TODD, District Judge.[*]

WELLFORD, Circuit Judge.

Plaintiff-appellant appealed the district court's denial of his claims of failure to provide an adequate education based on the due process and equal protection clauses of the fourteenth amendment and on two federal statues—The Education for All Handicapped Children Act of 1975 ("EAHCA") and the Rehabilitation Act § 504 ("§ 504"). On appeal plaintiff seeks monetary damages under the EAHCA, § 504 and 42 U.S.C. § 1983.[1] For the reasons stated below, we affirm the district court on all grounds and its judgment for all defendants.

## I.

This case presents the unfortunate and sad circumstance of a young man, Dennis Gallagher, who is deaf and mentally handicapped, and his mother's effort to obtain educational assistance for him. Gallagher

---

[*] The Honorable James D. Todd, United States District Judge for the Western District of Tennessee, sitting by designation.

1. The district court found that plaintiff's original claims for injunctive and declaratory relief were moot. Plaintiff does not raise the issues of injunctive or declaratory relief on appeal.

cannot speak and can communicate only through a very limited use of sign language. He was born on January 13, 1954. In the 1973–74 school year he entered the Oakland Training Institute program of defendant Oakland County Intermediate School District in his home area. He remained in this program through the academic year 1975–76. During the 1976–77 school year he was enrolled in defendant Farmington School District's special education program. From the 1977–78 school year until he reached the age of 25 in 1979, Gallagher was enrolled in defendant Pontiac School District's special education program. At no time was he ever excluded from attending any of defendants' schools or from participating in their special education programs. It is also important to note that Gallagher was never enrolled in a program that received federal financial assistance.

Plaintiff brought this action in December 1981 alleging that defendants had deprived him of any meaningful education, basing his claims on the various grounds previously indicated. The district court found in favor of defendants on all counts and this appeal ensued.

The United States Supreme Court, in *Smith v. Robinson*, 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984), recently addressed an action to secure a "free appropriate education" for a handicapped child, based on the Education of the Handicapped Act (1983 amended title of the EAHCA), § 504, and the due process and equal protection clauses of the Constitution. The Court found that "Congress intended the EHA to be the *exclusive* avenue through which a plaintiff may assert an equal protection claim to a publicly financed special education." *Id.* at 1009, 104 S.Ct. at 3468 (emphasis added). In narrowing the holding, the Court noted that when the EHA is applicable, the equal protection clause is not available as the basis for a claim. *Id.* at 1013, 104 S.Ct. at 3470. In addition, the Court held that a plaintiff may not enlarge on the remedies available under the EHA by resort to § 504. *Id.* at 1021, 104 S.Ct. at 3474. The Court, however, left open the question whether Congress intended to preclude a due process challenge. *Id.* at 1013–14, 104 S.Ct. at 3470. Plaintiff asserts substantially the same claims that were asserted in *Smith*. We first determine whether the EAHCA is available to Gallagher. If the EAHCA is available, under *Smith* the equal protection and § 504 claims are precluded.

## II. *EAHCA*

■ 20 U.S.C. § 1401 *et seq.* ("EAHCA") is a comprehensive federal statutory scheme designed to guarantee a "free appropriate public education" to handicapped children. *See* 20 U.S.C. § 1401, Declaration of Purpose, n. (c) (now codified at 20 U.S.C. § 1400(c)). In this case the primary dispute regarding the EAHCA concerns the date the act went into effect. Plaintiff claims the act became effective in 1975; defendants contend it did not become effective until 1977.

The substantive provision of the EAHCA that requires public schools to provide a free appropriate education for handicapped children is found at 20 U.S.C. § 1412(2)(B). Section 1412 reads, in pertinent part, as follows:

> In order to qualify for assistance under this subchapter in any fiscal year, a State shall demonstrate to the Commissioner that the following conditions are met:
>
> . . . .
>
> (2) The State has developed a plan [that] . . . shall set forth in detail the policies and procedures which the State will undertake or has undertaken in order to assure that—
>
> . . . .
>
> (B) *a free appropriate public education will be available for all handicapped children between the ages of three and eighteen within the State not later than September 1, 1978, and for all handicapped children between the ages of three and twenty-one within the State not later than September 1, 1980*, except that, with re-

spect to handicapped children aged three to five and aged eighteen to twenty-one, inclusive, the requirements of this clause shall not be applied in any State if the application of such requirements would be inconsistent with State law or practice, or the order of any court, respecting public education within such age groups in the State[.]

20 U.S.C. § 1412 (emphasis added). This section amended the EAHCA in 1975. The Historical Note in the United States Code Annotated and Public Law 94–142 both state expressly that this section was to take effect on October 1, 1977. *See* 20 U.S.C.A. § 1412 Historical Note, 1975 Amendment; Pub.L. No. 94–142, 1975 U.S. Code Cong. & Ad.News (89 Stat.) 796. The sections that were to become effective immediately in 1975, clauses (A), (C), (D), and (E) of section 1412 paragraph 2, related to *preparation for* the 1977 effective date.[2] Because we find that the requirement to have a free appropriate public education *available* did not become effective until 1977, defendants were not required to provide a free "appropriate" public education for any handicapped children before October 1, 1977. *See Boxall v. Sequoia Union High School Dist.*, 464 F.Supp. 1104, 1112 (N.D.Cal.1979).

Dennis Gallagher was enrolled in the Oakland County Intermediate School District only through the academic year 1975–76. The EAHCA was not in effect until *after* he left the Oakland schools. He was enrolled in the Farmington School District only in the academic year 1976–77. The EAHCA became effective in October 1977, four months after Gallagher left Farmington. When he entered the Pontiac School District program in the fall of 1977, he was 23 years old. The EAHCA requires an appropriate public education only for handicapped children between the ages of 3 and 21. *See* 20 U.S.C. § 1412(2)(B). Gallagher thus does not have a valid claim under the EAHCA, because the act did not require any of the defendants to provide an appropriate education to Gallagher at the time he was enrolled in their special education programs.

### III. *Constitutional Issues*

#### A. Due Process

■ Plaintiff claims that defendants violated the due process clause by failing to provide him with education commensurate with his needs and by failing to abide by procedural safeguards. To establish a deprivation of an interest protected by the due process clause, plaintiff must show that he was excluded from defendants' programs. Plaintiff cites several cases that have recognized due process rights in an education context, but these cases are distinguishable on the basis that each cited case concerned an exclusion from school. *See Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975) (expulsion); *Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975) (temporary expulsion/suspension); *Tinker v. Des Moines Indep. Community School Dist.*, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 222 (1969) (suspension).

Plaintiff contends that he was in effect "excluded" from defendants' programs because he had no communicative skills and sat in the classroom unaware of what was happening. According to plaintiff he was thus "deprived" and "excluded" even though he was allowed to enter the classroom. Plaintiff's use of semantics in this regard, however, does not alter the substance of his claim, which is that he was provided no appropriate education. Courts have repeatedly rejected the notion that the due process clause secures a right to the most appropriate education. *See, e.g., O'Connor v. Bd. of Educ. of School Dist. No. 23*, 645 F.2d 578, 582 (7th Cir.), *cert. denied*, 454 U.S. 1084, 102 S.Ct. 641, 70 L.Ed.2d 619 (1981); *Johnston v. Ann Arbor Public Schools*, 569 F.Supp. 1502,

---

**2.** For example, these provisions required schools to establish goals and timetables, § 1412(2)(A), identify and evaluate children in need of special education, § 1412(2)(C), establish policies and procedures, § 1412(2)(D), and make the plan available to parents and guardians. § 1412(2)(E).

1505–06 (E.D.Mich.1983); *Davis v. Maine Endwell Cent. School Dist.*, 542 F.Supp. 1257, 1263; (N.D.N.Y.1982); *Johnpoll v. Elias*, 513 F.Supp. 430, 431–32 (E.D.N.Y. 1980). We adhere to this view; plaintiff is not constitutionally entitled to the most appropriate education that might have assisted him in respect to his severe handicap.

Sound policy reasons support the proposition that the Constitution does not guarantee the most appropriate education.

> The system of public education that has evolved in this Nation relies necessarily upon the discretion and judgment of school administrators and school board members, and § 1983 was not intended to be a vehicle for federal-court corrections of errors in the exercise of that discretion which do not rise to the level of violations of specific constitutional guarantees.

*Wood v. Strickland*, 420 U.S. 308, 326, 95 S.Ct. 992, 1003, 43 L.Ed.2d 214 (1975). *See also Epperson v. Arkansas*, 393 U.S. 97, 104, 89 S.Ct. 266, 270, 21 L.Ed.2d 228 (1968) ("Courts do not and cannot intervene in the resolution of conflicts which arise in the daily operation of school systems and which do not directly and sharply implicate basic constitutional values."). Not only are such matters concerning discretionary methods of assisting the handicapped student inappropriate for federal court intervention, but requiring local education boards to guarantee the most appropriate education would open a "Pandora's box" of litigation. We find that defendants did not infringe any right of the plaintiff that is protected by the due process clause. Finding no deprivation of a protectable interest, we need not consider whether defendants provided sufficient procedure with respect to the alleged deprivation.

### B. Equal Protection

■ Plaintiff also claims that defendants violated his rights under the equal protection clause. Defendants point out that Gallagher was not excluded from any programs and thus distinguish the cases plaintiff relies on. *See, e.g., Plyler v. Doe*, 457 U.S. 202, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982); *William S. v. Gill*, 536 F.Supp. 505 (N.D.Ill.1982); *Mills v. Bd. of Educ. of Dist. of Columbia*, 348 F.Supp. 866 (D.D.C. 1972). In this case, the foregoing due process analysis also applies in the equal protection context. Despite Gallagher's attempt to characterize his situation in school as one of "exclusion," he was, in fact, never physically excluded and thus was never actually deprived of an interest protected by the Constitution. "Public education is not a 'right' granted to individuals by the Constitution." *Plyler v. Doe*, 457 U.S. 202, 221, 102 S.Ct. 2382, 2396, 72 L.Ed.2d 786 (1982) (citing *San Antonio Indep. School Dist. v. Rodriguez*, 411 U.S. 1, 35, 93 S.Ct. 1278, 1297, 36 L.Ed.2d 16 (1973)).

Although Gallagher states conclusively that he was not treated in a similar fashion as others, he never explains how he was treated any differently from any similarly situated students. The essence of his claim does not constitute a valid equal protection challenge. When a handicapped child does not allege that he has been singled out or treated differently from the nonhandicapped child, but rather needs *additional* special services, the fourteenth amendment is rarely implicated. *Pinkerton v. Moye*, 509 F.Supp. 107, 114 (W.D.Va.1981); *see also Johnston v. Ann Arbor Public Schools*, 569 F.Supp. 1502, 1505 (E.D.Mich. 1983) (equal protection claim dismissed because plaintiff did not show she was treated any differently from other handicapped children). We conclude that Gallagher has not been deprived of his equal protection rights. In sum, plaintiff did not have a constitutional right to the most appropriate education that would have assured him of progress in light of his disabilities.

### IV. § 504

■ Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, provides in pertinent part:

> No otherwise qualified handicapped individual ... shall, solely by reason of his handicap, be excluded from the partic-

ipation in, be denied the benefits of, or be subjected to discrimination *under any program or activity receiving Federal financial assistance*....

29 U.S.C. § 794 (emphasis added). The parties' principal dispute over § 504 stems from the fact that the specific programs in which Gallagher participated did not receive federal financial assistance. Defendants argue that § 504 thus does not apply.

Courts have split over the issue of whether program-specific federal financial assistance is a prerequisite to a § 504 claim. One of the leading cases for the proposition that § 504 is limited to program-specific financial assistance is *Brown v. Sibley*, 650 F.2d 760 (5th Cir.1981). The *Brown* court stated:

> [W]e hold that it is not sufficient, for purposes of bringing a discrimination claim under section 504, simply to show that some aspect of the relevant overall entity or enterprise receives or has received some form of input from the federal fisc. A private plaintiff in a section 504 case must show that the program or activity with which he or she was involved, or from which he or she was excluded, itself received or was directly benefited by federal financial assistance.

650 F.2d at 769 (footnotes omitted). *See also Doyle v. Univ. of Alabama in Birmingham*, 680 F.2d 1323, 1326–27 (11th Cir.1982); *Jones v. Metropolitan Atlanta Rapid Transit Auth.*, 681 F.2d 1376, 1382 (11th Cir.1982), *cert. denied*, 465 U.S. 1099, 104 S.Ct. 1591, 80 L.Ed.2d 123 (1984); *Simpson v. Reynolds Metal Co.*, 629 F.2d 1226, 1232 (7th Cir.1980); *Ferris v. Univ. of Texas at Austin*, 558 F.Supp. 536, 541, 543 (W.D.Tex.1983).

Other courts have adopted a wider, "institution" approach rather than a program-specific approach. In *Wright v. Columbia Univ.*, for example, the court stated: "To the extent that the University receives federal funding, component entities thereof benefit indirectly through the reallocation of funds received from other sources." 520 F.Supp. 789, 792 (E.D.Pa.1981). That court, therefore, held that § 504 applied

even though the discrete program in which plaintiff sought to participate did not receive funds. *Id. See also Arline v. School Bd. of Nassau County*, 772 F.2d 759, 763 (11th Cir.1985), *cert. granted in part*, ⸺ U.S. ⸺, 106 S.Ct. 1633, 90 L.Ed.2d 179 (1986) (holding the relevant "program" is the entire school system); *Poole v. South Plainfield Bd. of Educ.*, 490 F.Supp. 948, 951 (D.N.J.1980).

The Supreme Court has not ruled on this precise § 504 issue. We find, however, that the program-specific approach is most consistent with Supreme Court and Sixth Circuit rulings in the Title IX context, which is closely analogous to § 504 in both language and underlying policy. The relevant language of Title IX reads:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education *program or activity receiving Federal financial assistance* ....

20 U.S.C. § 1681(a) (emphasis added). "The overwhelming similarity of these quoted passages is no accident. Congress expressly modeled the discrimination prohibition contained in section 504 after the prohibitory language contained in Title VI and Title IX." *Brown v. Sibley*, 650 F.2d at 768.

The Supreme Court has ruled that "an agency's authority under Title IX ... is subject to the *program-specific* limitations of §§ 901 and 902." *See Grove City College v. Bell*, 465 U.S. 555, 570, 104 S.Ct. 1211, 1220, 79 L.Ed.2d 516 (1984) (quoting *North Haven Bd. of Educ. v. Bell*, 456 U.S. 512, 538, 102 S.Ct. 1912, 1926, 72 L.Ed.2d 299 (1982)) (emphasis added). We have also expressly rejected the institution-wide, "ripple effect" reasoning asserted in *Wright*.

> We do not believe that Congress intended, in enacting Title IX, to authorize [regulation of] entire colleges and universities because federal money benefits the entire institution.... [P]rovided that the *'program-specific'* limitation in Title

IX is met, [Hillsdale] is subject to regulation.

*Hillsdale College v. Dept. of Health, Educ. & Welfare*, 696 F.2d 418, 429–30 (6th Cir. 1982) (emphasis added) (footnote omitted).

Because Title IX is closely analogous to § 504, the precedent cited indicates a similar rule with respect to § 504. We therefore adopt a program-specific approach, and dismiss Gallagher's § 504 claim because he never sought to participate in any particular program that received federal financial assistance.

### V. *Monetary Damages*

Plaintiff seeks monetary damages under the EAHCA, § 504, and § 1983. Because we find the EAHCA and § 504 inapplicable and find no constitutional violation, we need not reach the damages issue.

In summary, though not unsympathetic to plaintiff's plight, under the facts and circumstances we find that the district court committed no error in ruling for the defendants as to each of the causes of action asserted.