Vickie JOHNSTON, by her Next Friend Jean Arthur JOHNSTON, Plaintiff,

v.

ANN ARBOR PUBLIC SCHOOLS, Hazel Turner, Individually and her official capacity as Director of Special Education of the Ann Arbor Public Schools; Harry Howard, Individually and in his official capacity as Superintendent of Ann Arbor Schools; Edie Faye, Individually and in her official capacity as Principal of Wines Elementary School; Washtenaw Intermediate School District; Robert Barnes, Individually and in his official capacity as Director of Special Education of the Washtenaw Intermediate School District; Nick A. Ianni, Individually and in his official capacity as Superintendent of the Washtenaw Intermediate School District, Defendants.

Civ. A. No. 83CV–6164–AA.

United States District Court, E.D. Michigan, S.D.

Sept. 2, 1983.

---

Jon R. Garrett, Garrett & Rogers, Detroit, Mich., for plaintiff.

Theresa M. Smith, Detroit, Mich., Arthur E. Carpenter, Allyn D. Kantor, DeVine, DeVine, Kantor & Serr, Ann Arbor, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER

JOINER, District Judge.

This case involves the proposed transfer of plaintiff, an eleven year old girl who suffers from cerebral palsy, from the Wines Elementary School in Ann Arbor to Estabrook Elementary School in Ypsilanti. Defendants are the Ann Arbor Public Schools and the Washtenaw Intermediate School District, and individuals who in their official capacities with the institutional defendants are allegedly responsible for the decision to transfer the plaintiff to Estabrook.

Plaintiff has alleged that her transfer to the Estabrook School constituted a violation of her right to be educated in the "least restrictive educational environment", as provided in the Education for All Handicapped Children Act (EAHCA), 20 U.S.C. §§ 1411–1420. Plaintiff further alleges that this transfer violated her rights under § 504 of the Rehabilitation Act, 49 U.S.C. § 794, and her Constitutional rights of due process and equal protection as secured by the Fourteenth Amendment. Finally, plaintiff has added a claim under state law, Rule 340.1724 of the Michigan Special Education Rules implemented pursuant to the Michigan Mandatory Special Education Act, M.C.L.A. § 380.1751.

This case is before the court on defendants' motion to dismiss and for summary judgment.

## FACTS

The facts in the case are undisputed. In September of 1982, plaintiff was enrolled in the Wines School for a 30-day placement for purposes of evaluation and a determination of an appropriate placement. An Individual Educational Planning Committee was convened pursuant to state law, and ultimately adopted an Individual Education Plan (IEP). By the terms of the plan, plaintiff was to be placed in the New Horizons Educational Center, located in the Estabrook School. The New Horizons Center was designed to address the kinds of physical problems that impede the education of handicapped children such as the plaintiff.

Although the papers currently before the court are not altogether clear on the matter, it appears that plaintiff was being taught in traditional classes at Wines School in which the majority of students were not handicapped. It also appears that she was having significant problems relating to her health, sanitation and her ability to learn. The record discloses a detailed description of the program that is available to plaintiff at the New Horizons Center. Separate classrooms are maintained for children who are "physically or otherwise health impaired" (POHI). These classrooms are clustered together in the center of the Estabrook School. The regular classrooms are primarily located along the outer walls of the building, and are not immediately adjacent to the POHI classes.

The record indicates that the New Horizons Center is specifically designed to accommodate the needs of handicapped children. Facilities are provided for occupational therapy, physical therapy, and counseling of such children. In addition, the school contains equipment that is designed to meet the needs of the handicapped, such as wheelchair tables that would permit a non-ambulatory child to operate a microscope, Affidavit of Harvey Gregerson, ¶ 13.

Under the terms of the IEP, plaintiff would be "mainstreamed" for a minimum of two hours per day; that is, she would spend at least two hours of her school day in the regular classrooms that are composed primarily of non-handicapped students. By implication, the rest of her school day would be spent in the POHI classes, in which only handicapped children are present.

Plaintiff's mother disagreed with the assessment of the committee, of which she was a member, and exercised her right to a review of the IEP by an administrative hearing officer. When that officer determined that he was in agreement with the plan, plaintiff's mother exercised her statutory right to an appeal of the local hearing decision by the State Department of Education. Again, the IEP was approved on this second level of state administrative review.

From the decision of the State Level Reviewing Official, plaintiff brings this action pursuant to 20 U.S.C. § 1415(e)(2), which provides that any party aggrieved by a decision of the state educational agency shall have the right to bring a civil action in United States District Court. Plaintiff has consolidated her claims under the Rehabilitation Act, the Fourteenth Amendment, and the Michigan Special Education Act with her appeal under the EAHCA.

THE CONSTITUTIONAL CLAIMS

Plaintiff has alleged that, by transferring her out of her neighborhood school, in which she was being educated in classes composed primarily of non-handicapped children, to a more distant school in which she would be educated primarily with other handicapped children, defendants violated her right to equal protection of laws and due process of law.

■ The court agrees with defendants that plaintiff has failed to allege sufficient facts that would support her claim of denial of equal protection. Defendants fully complied with the procedural requirements of the EAHCA and applicable state laws. At most, they reached a decision concerning the placement of the plaintiff that was incorrect. Inasmuch as plaintiff has failed to challenge the constitutionality of the EAHCA on its face, her equal protection claim must rely upon a showing that the procedures of the Act as applied in this case were discriminatory, *cf. Crawford v. Board of Education of City of Los Angeles,* —— U.S. ——, 102 S.Ct. 3211, 73 L.Ed.2d 948 (1982). Plaintiff has failed, however, to allege any facts that would indicate that she was treated any differently from other handicapped children who are evaluated according to the procedures mandated by state and federal law. The record discloses no facts from which a violation of the equal protection clause can be found.

■ Turning to the due process claim, there can be no reasonable contention that plaintiff did not receive adequate procedural protection in this case. The complaint itself describes the steps that plaintiff took in appealing the initial assessment through two levels of state administrative review before she brought this action. There have been no allegations that these procedures fell short of the traditional due process requirements of notice and an opportunity to be heard, *cf. Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1969). The defendants concededly complied with the extensive procedural requirements imposed upon them by the EAHCA and by state law. Certainly the due process clause of the Fourteenth Amendment requires no more than this.

■ With respect to a claim for violation of substantive due process, the plaintiff has also failed to state a claim for which relief can be granted. While there is no Constitutionally-protected right to an education, *San Antonio School District v. Rodriguez,* 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973), the Supreme Court has recently indicated that a complete deprivation of a public education from a particular class of persons imposes onerous burdens upon members of that class, and will be closely scrutinized, *Plyler v. Doe,* 457 U.S. 202, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982) (case arising under the equal protection clause). The Constitution thus may be invoked against a state's allocation of educational resources that totally or substantially bypasses the needs of handicapped children, *Frederick L. v. Thomas,* 408 F.Supp. 832 (E.D.Pa.1976); *Fialkowski v. Shapp,* 405 F.Supp. 946 (E.D.Pa.1975). Plaintiff in this case, however, has made no such allegation that she has effectively been denied access to public education. Rather, she argues that, given the choice between two possible placements, the defendants did not assign plaintiff to that school in which she would

be educated to the maximum extent possible with non-handicapped children. While the denial of an education in the least restrictive feasible setting is properly the subject of an action brought under the EAHCA, it does not implicate rights secured by the due process clause, *see Akers v. Bolton,* 531 F.Supp. 300 (D.Kan.1981).

For these reasons, plaintiff's Constitutional claims are dismissed.

## THE REHABILITATION ACT

Plaintiff claims that her proposed transfer from the Wines to the Estabrook School violates her rights under § 504 of the Rehabilitation Act, 29 U.S.C. § 794. That statute prohibits the denial of benefits to an "otherwise qualified handicapped person" by any entity that receives federal financial assistance if such a denial is predicated solely upon the handicap of the person who is denied the benefits. The question then, taking the facts in a light most favorable to the plaintiff for the purposes of this motion, is whether the transfer of a handicapped child from a less restrictive educational setting to a more restrictive one, constitutes wrongful discrimination for the purposes of § 504 of the Rehabilitation Act.

■ This question has been answered in the negative in the recent case of *Monahan v. State of Nebraska,* 687 F.2d 1164 (8th Cir.1982). The *Monahan* court concluded that § 504 imposed a prohibition against discrimination, and discrimination requires something more than a "substantively faulty individualized education plan," *id.* at 1170. It requires "either bad faith or gross misjudgment" before a violation can be shown. In other words, a school system's failure to observe the affirmative dictates of the EAHCA to provide each handicapped child with an education in the least restrictive feasible setting in the absence of either bad faith or gross misjudgment does not constitute "discrimination" under the Rehabilitation Act. Rather, an alleged violation of the EAHCA which comes by reason of a negligent or merely incorrect decision on the part of the evaluating officials, ("education malpractice" as it is described by the *Monahan* court), does not create liability under this act. In order to show that an act of discrimination has occurred that violates the Rehabilitation Act plaintiff must allege that the defendants intended to deny her the benefits of a public education, and had known that this denial of benefits would be inimical to the interests of the plaintiff or that the defendants were in bad faith or made gross misjudgments. *Monahan, supra.*

■ This court agrees with the distinction drawn between claims that merely allege a mistaken evaluation of a child's special education needs, and those which indicate an intentional or bad faith decision to deny benefits to a handicapped child. Because only the latter would state a cause of action under § 504 of the Rehabilitation Act, and because plaintiff has failed to allege that defendants intentionally denied her educational resources, acted in bad faith, or were grossly negligent when they made the assignment to the Estabrook School, the claim arising under § 504 of the Rehabilitation Act is also dismissed.

> "The standard of liability we suggest here ... reflects what we believe to be a proper balance between the rights of handicapped children, the responsibilities of state educational officials, and the competence of courts to make judgments in technical fields. So long as the state officials involved have exercised professional judgment, in such a way as not to depart grossly from accepted standards among educational professionals, we cannot believe that Congress intended to create liability under § 504."

*Monahan,* 687 F.2d at 1171.

## THE EDUCATION FOR ALL HANDICAPPED CHILDREN ACT

Plaintiff claims that the defendants have violated the Education for All Handicapped Children Act, 20 U.S.C. 1412, by insisting that plaintiff be transferred to the New Horizons Center at the Estabrook School.

The statute provides in pertinent part that the school district be required to adopt procedures to assure that:

> *(T)o the maximum extent appropriate,* handicapped children ... are educated with children who are not handicapped,

and that special classes, separate schooling, or other removal of handicapped children from the regular educational environment occurs only when the nature or severity of the handicap is such that education in regular classes with the use of supplemental aids and services cannot be achieved satisfactorily . . .

20 U.S.C. § 1412(5)(B) (emphasis added).

With respect to this requirement, the Supreme Court has noted:

Despite the preference for "mainstreaming" handicapped children—educating them with non-handicapped children—Congress recognized that regular classrooms simply would not be a suitable setting for the education of many handicapped children. The Act expressly acknowledges that "the nature and severity of the handicap (may be) such that education in regular classes with the use of supplementary services cannot be achieved satisfactorily." The Act thus provides for the education of some handicapped children in separate classes or institutional settings.

*Hendrick Hudson Dist. Bd. of Education v. Rowley,* —— U.S. ——, ——, n. 4, 102 S.Ct. 3034, 3038, n. 4, 73 L.Ed.2d 690.

The Act sets forth in Section 1415 an elaborate array of procedures that must be followed when a person aggrieved by a decision of a state educational agency seeks to challenge such a decision. There can be no contention in this case that the full panoply of procedural rights have not been afforded to plaintiff. The complaint describes her initiation of, and participation in, each step of the process. She has now reached the final stage of the process, an appeal to this court.

The first question to be addressed is the scope of this court's review of the prior state proceedings under § 1415. The statute granting review in this court provides that "the court shall receive the records of the administrative proceedings, should hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate."

The statute thus establishes as the standard of review in § 1415 cases the "preponderance of the evidence" test. This is the familiar standard that guides the trier of fact in most civil proceedings, according to which, in order to find a certain fact, the evidence which shows that fact must be more probable than not, *Gardner v. Wilkinson,* 643 F.2d 1135, 1137 (5th Cir.1981).

While the adoption of such a standard by Congress in § 1415 cases seems to indicate that the district court is to review the evidence as it would in a trial de novo, without giving any presumption of correctness to the state administrative tribunal, the Supreme Court has cautioned that this review be properly focused:

"[T]he provisions that a reviewing court base its decision on the 'preponderance of the evidence' is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of school authorities which they review. The very importance which Congress has attached to compliance with certain procedures in the preparation of an IEP would be frustrated if a court were permitted simply to set state decisions at nought. The fact that § 1415(e) requires that the reviewing court 'receive the records of the [state] administrative proceedings' carries with it the implied requirement that due weight shall be given to these proceedings. And we find nothing in the Act to suggest that merely because Congress was rather sketchy in establishing substantive requirements for the preparation of an IEP, it intended that reviewing courts should have a free hand to impose substantive standards of review which cannot be derived from the Act itself. In short, the statutory authorization to grant 'such relief as the court determines is appropriate' cannot be read without reference to the obligations, largely procedural in nature, which are imposed upon recipient States by Congress."

*Rowley,* —— U.S. at ——, 102 S.Ct. at 3051.

The Court went on to underscore the limited role that courts were to assume in

reviewing a substantive decision by education officials concerning the placement of a handicapped student. The courts were to focus their review of the prior administrative proceedings upon the issue of procedural regularity. The Court further stated that, in addition to assuring procedural regularity, the reviewing court was to determine if "the individualized education program developed through the Act's procedures is reasonably calculated to enable the child to receive education benefits," *id.*

Thus, the district court in determining if the mandate of § 1412(5)(B) has been fulfilled, is directed to give "due weight" to the proceedings used in making the determination at the state administrative level.

The ultimate question then, is whether or not Vickie Johnston can be educated in regular classes at the Wines School with the use of supplemental aids and services, or if instead, her handicap is so severe that her education will not be achieved by such a placement with the use of supplementary aids and services and that the New Horizon placement would be better. As the Supreme Court noted in *Rowley,* federal judges have no expertise in this area, and must rely upon the determinations of such experts in the field of special education. But the judges do have expertise in resolving disputed questions of fact according to the preponderance of the evidence presented. The evidence on which they should chiefly rely, according to *Rowley,* is the testimony propounded by experts after giving "due weight" to the placement proceedings. In the end, the court should review such expert testimony and other relevant evidence, and determine, according to the preponderance of the evidence standard, the appropriate placement of the child, in light of the statutory indication in favor of "mainstreaming" and after appropriate consideration of the conclusions of those involved in the placement.

This matter is before the court on a motion for summary judgment supported by the complete record and affidavits filed by both parties. The courts obligation, therefore, is to determine if there exists "any genuine issues of material fact" from which, if they were ultimately resolved in plaintiff's favor, she could prevail, Fed.R. Civ.P. 56(b). The record consists of three parts:

1. The record of the proceedings that were conducted by the state officials with respect to the placement of Vickie Johnston.

2. An affidavit submitted by Harvey Gregerson, the Director of the Centralized Program for physically or otherwise health-impaired students at the New Horizons Education Center.

3. The affidavit of the mother of the plaintiff, Ms. Jean Johnston.

As previously indicated, the state education officials concluded that the original IEP had reached a correct determination concerning the placement of the plaintiff and that IEP appears to have been formulated as a result of a carefully developed and thoughtful process involving all persons concerned with that process. Mr. Gregerson, in addition, gave his professional opinion that the placement of the plaintiff at the New Horizons Center would "maximize her educational potential in the least restrictive environment in a setting which can address her educational needs in the most satisfactory manner."

Ms. Johnston, the plaintiff's mother, on the other hand, states that it is her opinion that the Wines Elementary School offers plaintiff a full range of education opportunities with non-handicapped students, whereas the New Horizons Center would require that plaintiff be placed in segregated classrooms with other handicapped children for the majority of each day, thereby severely limiting plaintiff's interaction with non-handicapped children.

Although there is some dispute that a placement in the Wines School would result in a greater degree of "mainstreaming" than would placement in the New Horizons Center, because her severe physical handicap itself promotes an isolation from non-handicapped children, this is not significant. The ultimate question in this case is whether the New Horizons placement is necessary

due to the nature and severity of the handicap or whether instead, the Wines School placement would achieve a satisfactory educational experience with the use of supplementary aids and services to the maximum extent appropriate. With respect to this question, the Supreme Court, in *Rowley,* directed that the district courts not to "substitute their own notions of sound educational policy for those of the school authorities which they review". It is a question that is ultimately best left to the judgment of experts in the field of special education.

■ The record in this case, as shown from the findings and conclusions in the administrative record and the affidavits that can appropriately be considered, indicates that no genuine issue of material fact exists on this point. The plaintiff would not achieve a satisfactory education by the Wines School placement even with the use of supplementary aids and services to the maximum extent appropriate and that such experience would be much more likely achieved in the New Horizons Center. Plaintiff has offered only the opinion of her mother, who is not described as an expert in the field of special education, to rebut this determination. It would be as inappropriate to substitute the opinion of the mother as it would be to substitute the opinion of the judge. The court, therefore, does not consider this affidavit as creating a genuine issue of material fact. The court cannot render its own expert opinion on this delicate subject, and must of necessity determine that no genuine issue of material fact remains concerning the appropriate placement of the plaintiff. There is no indication in the voluminous records of the proceedings conducted by the state officials that those persons were not cognizant of their obligation under the EAHCA to provide the plaintiff with an education in the least restrictive feasible environment. Indeed, these officials repeatedly state that their decision conforms with the least restrictive environment requirement of § 1412(5) of the Act.

This is a classic case for summary judgment. The record has been developed. It has been put before the court. The case has been fully argued. The case is ripe for decision.

The *Rowley* case is controlling:

"The primary responsibility for formulating the education to be accorded a handicapped child, and for choosing the educational method most suitable to the child's needs, was left by the Act to state and local educational agencies in cooperation with the parents or guardian of the child. The Act expressly charges States with the responsibility of 'acquiring and disseminating to teachers and administrators of programs for handicapped children significant information derived from educational research, demonstration, and similar projects, and [of] adopting, where appropriate, promising educational practices and materials." § 1413(a)(3). In the face of such a clear statutory directive, it seems highly unlikely that Congress intended courts to overturn a State's choice of appropriate educational theories in a proceeding conducted pursuant to § 1415(e)(2)."

*Rowley,* —— U.S. at ——, 102 S.Ct. at 3051.

For the foregoing reasons, defendants' motion for summary judgment is granted with respect to the claim under the EAHCA. Having dismissed all the federal claims, the state claims do not have a jurisdictional base and are dismissed without prejudice.

So Ordered.