DUNIWAY, Circuit Judge (concurring and dissenting):

I concur in the last two paragraphs of Judge Ferguson's opinion because I agree that the "error," if it was error, was harmless.

I do not concur in the balance of the "Discussion" because I regard it as dictum. The claimed error being harmless, we need not decide whether it was error. The decision of that question by the majority is dictum, because it is not necessary to the disposition of the case. *See McDaniel v. Sanchez,* 1981, 452 U.S. 130, 141, 101 S.Ct. 2224, 2231, 68 L.Ed.2d 724.

As the Supreme Court has recently remarked, in a somewhat different context:

> In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.

*Strickland v. Washington,* — U.S. — at —, 104 S.Ct. 2052, 2069, 80 L.Ed.2d 674.

Our job is not to grade the trial judge's performance, but to decide the case correctly. We should, in my judgment, avoid unnecessary excursions into the complexities of the law—such as those of the rule against hearsay and its exceptions—whenever we can properly do so. This is such a case. When we conclude, as we do here, that we are going to find an alleged error harmless, we should defer the question of error to another day, when it is necessary for us to face it. When we undertake to decide a question that we do not need to decide, there is always a risk that we will give it less careful consideration than we should. I do not say that my sister and brother have done that here. I do say that we should avoid the risk of doing so.

Except for the ruling that the claimed error was harmless, I dissent. I concur in the result.

Raymond J. WILSON and Darlinda Wilson, in their own behalf and as parents and next friends of Jessica Wilson, Plaintiffs-Appellants,

v.

MARANA UNIFIED SCHOOL DISTRICT NO. 6 OF PIMA COUNTY; Raymond Narum, Loren Loftin, C. Roger Fulton, George Leaming, and Olive Barry, members of the Board of Trustees, Marana Unified School District No. 6, in their official capacities, Defendants-Appellees.

Nos. 83–1588, 83–1628.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 14, 1984.

Decided June 26, 1984.

Ann M. Haralambie, Tucson, Ariz., for plaintiffs-appellants.

Richard M. Yetwin, DeConcini, McDonald, Brammer, Yetwin & Lacy, Tucson, Ariz., for defendants-appellees.

Before ANDERSON, SCHROEDER, and ALARCON, Circuit Judges.

J. BLAINE ANDERSON, Circuit Judge:

Raymond J. Wilson and Darlinda Wilson filed suit against the Marana Unified School District, et al., on their own behalf and as the parents and next friends of Jessica Wilson. The Wilsons appeal a state administrative decision pursuant to the Education of All Handicapped Children Act of 1975 (EAHCA), 20 U.S.C. §§ 1400–1461 (1976 & Supp. V 1981), and the Rehabilitation Act of 1973, 29 U.S.C. §§ 701–794 (1976 & Supp. V 1981). The district court granted the appellee's motion for judgment on the pleadings. We affirm.

I. BACKGROUND

At the time this appeal was filed, Jessica Wilson was a second grade student in the Marana Unified School District. Jessica is a victim of cerebral palsy and is physically handicapped. Although she possesses at least a normal intelligence, she has had difficulty in learning to read and write because of her handicap.

While in the first grade, Jessica began receiving remedial instruction from a learning disabilities teacher with the help of an aide. The teacher assisted Jessica in learning to read using an auditory approach.

Unconvinced that Jessica was making satisfactory progress, the school district proposed to send her to a school in another district located approximately 30 minutes away. There, she would be taught by a special education teacher who was certificated in physical disabilities. Although Jessica was being taught by a special education teacher in the school she was attending, that teacher was certificated in learning disabilities. It is undisputed that Jessica is inflicted with a physical and not a learning disability. The Marana School District did not have a teacher who was certificated in physical disabilities.

Jessica's parents objected to the school district's proposal to relocate their daughter because they feared that moving her away from her neighborhood and friends would create emotional problems and would stigmatize her as a "handicap." They argued that she could receive an appropriate education at her neighborhood school.

The school district argues that under state law a child who qualifies for special education *must* be taught by a teacher who is certificated in that child's particular area of disability. We do not agree and do not reach a decision on that broad assertion. We hold only, under our standard of review, that the school district's decision was a reasonable one under the circumstances of this case.

The parents filed a request for a due process hearing before an impartial hearing officer, pursuant to 20 U.S.C. § 1415(b)(2) of the EAHCA. The officer reviewed the facts of the case and the applicable state and federal laws before ruling against the school district's proposal. The school district, pursuant to 20 U.S.C. § 1415(c), appealed to a state review officer who affirmed the decision. The parties subsequently agreed, however, to resubmit the issue to a different state review officer who reversed the decision. The parents then brought suit in district court appealing the decision of the second state review officer pursuant to 20 U.S.C. § 1415(e)(2). The school district moved to dismiss the case claiming that the parents had failed to exhaust their administrative remedies by not requesting a rehearing after the second state review officer handed down his decision. Both parties moved for judgment on the pleadings. The dis-

trict court denied the school district's motion to dismiss but granted its motion for judgment on the pleadings. Both parties appeal the denial of their motions.

## II. STANDARD OF REVIEW

■ This matter comes before this court on a stipulated set of facts. Therefore, the issue to be decided is whether the district court correctly interpreted and applied state law. *Yazzie v. Olney, Levy, Kaplan, & Tenner,* 593 F.2d 100 (9th Cir. 1979). A *de novo* review is also to be applied to questions of whether a state department of education's proposed individual educational program constituted a "free appropriate education" within the EAHCA. *Department of Education, State of Hawaii v. Katherine D.,* 727 F.2d 809, 814 n. 2 (9th Cir.1983).

## III. DISCUSSION

### A. Exhaustion of Remedies

Arizona has, in addition to the procedures under the EAHCA, a statute requiring the State Department of Education to permit a rehearing on decisions regarding the provision of a free appropriate public education to a handicapped child. Ariz. Rev.Stat.Ann. § 41–1010(B) (supp. pamphlet 1975–1983). Arizona also has a statute providing that when a statute or rule of an administrative agency allows for a rehearing, the decision of the agency is not final until the application for the rehearing is denied or the decision is rendered. Ariz. Rev.Stat.Ann. § 12–901(2). Because Jessica's parents did not request a rehearing of the second review officer's decision, the school district argues that they failed to exhaust their administrative remedies and the district court lacked jurisdiction over the case.

■ We do not agree that the parents failed to exhaust their administrative remedies. Although they never formally filed a request for a rehearing, their case was heard twice by state review officers. The first hearing occurred when the school district appealed the decision of the impartial hearing officer to the state review officer.

The second hearing occurred when the case was resubmitted to a second state review officer upon stipulation of the parties. This was the functional equivalent of a rehearing and to hold otherwise would exalt form over substance.

It is true that a division of the Arizona Court of Appeals has held that a party must utilize available rehearing procedures before seeking judicial review. *Herzberg v. David,* 27 Ariz.App. 418, 555 P.2d 677 (1976). In that case, however, there had been no administrative review prior to the institution of judicial proceedings. The second hearing in the present case fulfilled the purpose of the Arizona rehearing requirement by allowing the state review officer "the first opportunity to correct its own mistakes." *Id.* at 419, 555 P.2d at 678. It would be a futile exercise for the Wilsons to request another hearing of the matter because it would add nothing but confusion to an already divided result at the state review level. If the Wilsons won in a potential rehearing, would the school board, as an aggrieved party, then be expected to submit to yet another rehearing?

■ Where administrative procedures cannot afford adequate relief, the remedy need not be exhausted. *Monahan v. State of Nebraska,* 645 F.2d 592, 593, 597 (8th Cir.1981); 20 U.S.C. § 1415(e)(2).

A further reason for rejecting the idea that the Wilsons were required to request another hearing at the state level is furnished by the opinion of the second state review officer who noted that the aggrieved party did have the right to bring civil action as the next step in the proceeding.

### B. Teacher Certification

The EAHCA is a federal funding program which was designed to assist states in providing for the unique educational needs of handicapped children. If a state is to receive federal funding under the EAHCA, it must have in effect a policy that assures all handicapped children the right to a "free appropriate public education." 20 U.S.C. § 1412(1).

The school district argues that in order for Jessica to be given an appropriate education, she must be taught by a special education teacher specifically certificated in the area of physical disabilities. The school district contends that a teacher certificated in learning disabilities will not suffice. Therefore, it has proposed to send Jessica to another district where there is a teacher certificated in physical disabilities.

The parents maintain that neither Arizona nor federal law supports the school district's contentions. They argue that the EAHCA does not require the states to provide handicapped children with the best education possible. Instead, they contend that the congressional intention is that handicapped children be enabled to achieve a "reasonable degree of self-sufficiency." *Hendrick Hudson Dist. Bd. of Ed. v. Rowley*, 458 U.S. 176, 201 n. 23, 102 S.Ct. 3034, 3048 n. 23, 73 L.Ed.2d 690 (1982). The parents further maintain that the auditory approach, by which Jessica was given reading lessons in the first grade, is adequate to enable her to achieve a reasonable degree of self-sufficiency.

■ The parents have misinterpreted the federal and state laws. It may be true that the EAHCA does not require the states to provide handicapped children with the best education possible. This does not mean, however, that the states do not have the power to provide handicapped children with an education which they consider more appropriate than that proposed by the parents. In fact, the federal regulations promulgated pursuant to the EAHCA indicate that teachers of special education must meet state requirements in their field:

> As used in this part, the term "qualified" means that a person has met State educational agency approved or recognized certification, licensing, registration, or other comparable requirements which apply to the area in which he or she is providing special education or related services.

34 C.F.R. § 300.12 (1983).

Arizona has set out specific requirements for becoming certificated as a special edu-cation teacher. The pertinent state statutes and regulations show an intent to have handicapped children instructed by teachers who have focused their training on the needs of exceptional children. Ariz. Admin.Comp.R. Rule R7-2-603(F) designates four specific types of special education certificates and the requirements for obtaining them:

> F.   Special education certificates
> 1.   Basic special education certificate-grades K-12, valid six years, renewable. *May be issued in the area(s) of mentally handicapped, emotionally handicapped, learning disabilities and physically handicapped.* Requirements are:
>
> .   .   .   .   .
>
> c.   Eighteen semester hours of professional preparation in special education department coursework to include one course in each of the following: survey of/or orientation exceptional children [sic], *a basic course in the area of exceptionality,* diagnosis or remediation of learning problems, *methods of teaching in the specific area of exceptionality* or equivalent block courses, elective in special education coursework, and *student teaching in the specific area of exceptionality* within grades K-12.
>
> .   .   .   .   .

(Emphasis added).

Ariz.Admin.Comp.R. Rule R7-2-603(F) does not specifically limit teachers to instructing only those students who are classified in the same area of exceptionality that the teacher is certificated. The parents contend that this indicates a legislative intent to permit the broad use of special education teachers in various settings.

■ While we do not disagree with the parent's interpretation of legislative intent, we do not consider it to be the controlling issue in this matter. At issue here is a school district's ability, after determining that a handicapped student is not making satisfactory progress, to transfer that student to a school which can provide assistance from an instructor especially qualified

to train a student with that particular disability. We find that the school district's proposal does not conflict with state or federal law, but complements it by attempting to provide Jessica with a teacher particularly suited to deal with her learning problems. *Hendrick Hudson Dist. Bd. of Ed. v. Rowley*, 458 U.S. at 206, 102 S.Ct. at 3051. The school district's proposal, under the facts of this case, is reasonably calculated to furnish Jessica a free, appropriate education and therefore we affirm the decision of the district court. *Id.* at 207, 102 S.Ct. at 3051. *Johnston by Johnston v. Ann Arbor Public Schools*, 569 F.Supp. 1502 (E.D.Mich.1983).

■ The parents have drawn the court's attention to the federal and state mandate to "mainstream" handicapped children, assuring that, to the maximum extent possible, handicapped children are educated with children who are not handicapped. 20 U.S.C. § 1412(5)(B); 45 C.F.R. § 84.34(a) (1983); Ariz.Rev.Stat.Ann. § 15–764(A)(3) (spec. pamphlet 1983). We are well aware of the importance of this policy; however, it is a policy which must be balanced with the primary objective of providing handicapped children with an "appropriate" education. *See Johnston by Johnston v. Ann Arbor Public Schools*, 569 F.Supp. 1502, 1508–09 (E.D.Mich.1983) (transferring child from a regular classroom to a special education classroom does not violate the EAHCA's goal of mainstreaming so long as special education is necessary and appropriate. *See also Rowley*, 458 U.S. at 181 n. 4, 102 S.Ct. at 3038 n. 4.

The district court and the second state review officer determined that the objective of mainstreaming would not be thwarted by requiring Jessica to be instructed for a period of time by a physical disabilities teacher at another school. We agree. Although the policy of mainstreaming is to be applied "to the maximum extent *appropriate*," where, as here, "the nature or severity of the handicap is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily ...," a handicapped child

may be removed from "the regular educational environment." See 20 U.S.C. § 1412(5) (emphasis added) and 20 U.S.C. § 1412(5)(B).

## C. Attorneys' Fees

■ The Wilsons seek an award of attorneys fees pursuant to The Rehabilitation Act of 1973, 29 U.S.C. § 794a(b) (Supp. V 1981). Passage of the EAHCA, however, precludes them from recovering attorneys' fees under the Rehabilitation Act of 1973. In a recent Ninth Circuit opinion denying attorneys' fees under the Rehabilitation Act, the court held that:

> Arguably, [Jessica] might have recovered under this provision [The Rehabilitation Act] had Congress not enacted the EAHCA to provide special education and health services for handicapped children. In the face of the comprehensive remedial provisions of the EAHCA, however, we must conclude that Congress foreclosed persons complaining of conduct protected by the EAHCA from asserting claims under the Rehabilitation Act.

*Department of Education, State of Hawaii v. Katherine D.*, 727 F.2d 809, 820–21 (9th Cir.1983).

## IV. CONCLUSION

■ In deciding this case, the court acknowledges that public education has traditionally been a function of the states. They have been given much discretion over the years in formulating educational policies and systems. "[C]ourts lack the 'specialized knowledge and experience' necessary to resolve 'persistent and · difficult questions of educational policy.'" *Rowley*, 458 U.S. at 208, 102 S.Ct. at 3052 (citations omitted). The courts should not substitute their own notions of sound educational policy for those of the school authorities which they review. *Id.* at 206, 102 S.Ct. at 3051. Therefore, we must grant deference to the sound judgment of the various state educational agencies.

*Rowley* dealt with the typical situation where the parents of a handicapped child bring suit alleging that their child is not

being given sufficient special education and related services. Here, we are faced with the atypical situation of parents who are asking for education which is admittedly less, in dollars and services, than what the school system is offering. Regardless of this distinction, the proposition set forth in *Rowley*, i.e., that the courts should not act as administrators or legislators in the field of public education, is applicable.

We are sympathetic to the problems the Wilsons have faced and the difficult decisions they have been forced to make. Without question, they have their daughter's best interests at heart. We are equally convinced that the Marana Unified School District is greatly concerned with the welfare of all the children that pass through its system. Since the school district is acting within the bounds of federal and state law, we must grant deference to its sound judgment concerning the education of Jessica Wilson.

The decision of the district court is
AFFIRMED.