William E. JONES, Plaintiff-Appellant,

v.

**METROPOLITAN ATLANTA RAPID TRANSIT AUTHORITY,**
Defendant-Appellee.

No. 81–7746.

United States Court of Appeals,
Eleventh Circuit.

Aug. 6, 1982.

McGuigan, Repasky & Greer, Alexander J. Repasky, Atlanta, Ga., for plaintiff-appellant.

Kutak, Rock & Huie, Paul A. Howell, Jr., Metropolitan Atlanta Rapid Transit Authority, Francis Toole, Brenda Krebs Pollard, Atlanta, Ga., for defendant-appellee.

Before VANCE, JOHNSON and HENDERSON, Circuit Judges.

JOHNSON, Circuit Judge:

Plaintiff William E. Jones filed suit alleging that defendant Metropolitan Atlanta Rapid Transit Authority (MARTA) violated Section 504 of the Rehabilitation Act, 29 U.S.C.A. § 794, and various federal regulations by denying him a position as bus driver because of his handicap. The district court, 522 F.Supp. 370, determined that plaintiff lacked standing and dismissed the suit. Plaintiff appeals. We reverse.

I. *Facts*

MARTA provides rapid transit for the metropolitan area of Atlanta. The transit authority receives federal financial assistance in the form of engineering and construction grants and operating subsidies from the United States Department of Transportation (DOT). MARTA apparently utilizes a portion of the DOT funds to subsidize wages of certain employment positions, including traffic checkers and bus drivers.

Plaintiff worked for MARTA as a bus driver for 15 years. In March 1976 plaintiff suffered an injury that necessitated the amputation of his right leg. Plaintiff recovered from the injury and was rehired by MARTA as a traffic checker. Plaintiff, however, became dissatisfied with his position and sought reinstatement as a bus driver. Plaintiff asserted that despite his injury he was capable of performing the required functions of a bus driver. MARTA officials concluded that plaintiff's injury prevented him from performing the duties of a bus driver and denied his request for reinstatement.

After exhausting administrative remedies, plaintiff brought an action under Section 504 of the Rehabilitation Act, 29 U.S.C.A. § 794, contending that MARTA discriminated against him on the basis of his handicap.[1] The district court dismissed the suit. The court determined that Section 504 only provided a cause of action against employers that received federal financial assistance for the primary purpose of providing employment. Although MARTA received federal financial assistance, the funding was not primarily intended to provide employment.

1. Plaintiff has an implied right of action under Section 504 of the Rehabilitation Act. *Prewitt v. United States Postal Service*, 662 F.2d 292, 302 (5th Cir. 1981). *Accord, Miener v. State of Mo.*, 673 F.2d 969, 973 (8th Cir. 1982).

2. Section 504, 29 U.S.C.A. § 794 provides:

No otherwise qualified handicapped individual in the United States, as defined in section 706(7) of this title, shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service. The head of each such agency shall promulgate such regulations as may be necessary to carry out the amendments to this section made by the Rehabilitation, Comprehensive Services, and Developmental Disabilities Act of 1978. Copies of any proposed regulation shall be submitted to appropriate authorizing committees of the Congress, and such regulation may take effect no earlier than the thirtieth

The district court did note that plaintiff had standing under regulations promulgated by the DOT. 49 C.F.R. § 27.31. The regulations prohibited discrimination against qualified handicapped people in programs or activities that received federal financial assistance of any kind, not just those receiving funds for purposes of providing employment. The district court determined, however, that the regulations exceeded the scope of Section 504 of the Rehabilitation Act and were therefore invalid. Accordingly, MARTA was not amenable to suit under either the Rehabilitation Act or the DOT regulations.

## II. *Statutory Framework*

Section 504 of the Rehabilitation Act prohibits discrimination against otherwise handicapped individuals in "any program or activity receiving Federal financial assistance . . . ." 29 U.S.C.A. § 794.[2] The Rehabilitation Act does not, however, specify the remedies, procedures and rights of an aggrieved party. Instead, Section 505 provides that the "remedies, procedures, and rights" of a handicapped individual injured under the Act are found in Title VI of the Civil Rights Act of 1964. 29 U.S.C.A. § 794a.[3]

day after the date on which such regulation is so submitted to such committees.

3. Section 505, 29 U.S.C.A. § 794a provides:

(a)(1) The remedies, procedures, and rights set forth in section 717 of the Civil Rights Act of 1964, including the application of sections 706(f) through 706(k), shall be available, with respect to any complaint under section 791 of this title, to any employee or applicant for employment aggrieved by the final disposition of such complaint, or by the failure to take final action on such complaint. In fashioning an equitable or affirmative action remedy under such section, a court may take into account the reasonableness of the cost of any necessary work place accommodation, and the availability of alternatives therefor or other appropriate relief in order to achieve an equitable and appropriate remedy.

(2) The remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 shall be available to any person aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance under section 794 of this title.

Section 601 of the Civil Rights Act of 1964 (Title VI) contains sweeping prohibitions against race discrimination by employers.[4] Congress, however, placed significant restrictions upon the breadth of Section 601. Section 604 authorizes a federal department or agency to maintain an action against employers to enforce Title VI *only* if the employer receives federal financial assistance and "a primary purpose of the Federal financial assistance is to provide employment." 42 U.S.C.A. § 2000d–3.[5] Thus in order to bring suit under Title VI, an employer must receive federal funds for purposes of providing employment.

A number of circuits have concluded that Congress intended to incorporate the restrictions found in Section 604 of Title VI into the Rehabilitation Act. *United States v. Cabrini Medical Center*, 639 F.2d 908 (2d Cir. 1981); *Carmi v. Metropolitan St. Louis Sewer District*, 620 F.2d 672 (8th Cir. 1980), cert. denied, 449 U.S. 892, 101 S.Ct. 249, 66 L.Ed.2d 117 (1981); *Trageser v. Libbie Rehabilitation Center, Inc.*, 590 F.2d 87 (4th Cir. 1978), cert. denied, 442 U.S. 947, 99 S.Ct. 2895, 61 L.Ed.2d 318 (1979). Thus, a plaintiff will not have standing to maintain a suit under Section 504 of the Rehabilitation Act unless the employer receives federal financial assistance and the primary pur-

pose of the assistance is to provide employment. The courts have employed a variety of rationale to justify the incorporation of Section 604 into the Rehabilitation Act. In *Carmi, supra*, the Eighth Circuit essentially concluded that Congress intended the Rehabilitation Act and Title VI to be read *in pari materia*. The Fourth Circuit in *Trageser, supra*, determined that Congress intended to incorporate Section 604 into the Rehabilitation Act when it amended the Act by adding Section 505.

In the absence of controlling precedent in this Circuit[6] and in order to ascertain the correctness of these holdings, we must examine both the language of the relevant statutes and their legislative history.

III. *Section 504 of the Rehabilitation Act*

■ The starting point for the interpretation of a statute is the language of the act itself. *Perrin v. United States*, 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979); *United States v. Anderez*, 661 F.2d 404, 406 (5th Cir. 1981). Normally, a court will interpret a statute in a manner consistent with the plain meaning of the statutory language. *Fitzpatrick v. Internal Revenue Service*, 665 F.2d 327, 329 (11th Cir. 1982).

---

(b) In any action or proceeding to enforce or charge a violation of a provision of this subchapter, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

**4.** Section 601 of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000d, provides:

No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

**5.** Section 604 of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000d–3 provides:

Nothing in this subchapter shall be construed to authorize action under this subchapter by any department or agency with respect to any employment practice of any employer, employment agency, or labor organizations except where a *primary objective of the Federal financial assistance is to provide employment.* (Emphasis added.)

**6.** Standing under Section 504 of the Rehabilitation Act was considered by the Court in *Brown v. Sibley*, 650 F.2d 760 (5th Cir. 1981). In *Sibley*, the Court determined that a plaintiff did not necessarily have standing simply because the employer received some financial assistance from the federal government. Instead, the plaintiff had to establish that "the program or activity with which he or she was involved, or from which he or she was excluded, itself received or was directly benefited by federal financial assistance." *Id.* at 769. The opinion further stressed that the burden of establishing that the particular program/activity received federal financial assistance "should be slight." *Id.* at 769 n.14. *Accord, Doyle v. Univ. of Ala.—Birm.*, 680 F.2d 1323 (11th Cir. 1982); *Simpson v. Reynolds Metals Co., Inc.*, 629 F.2d 1226, 1232 (7th Cir. 1980).

Although holding that the plaintiff had to be involved in a program or activity that directly benefited from federal financial assistance, the Court did not determine whether the financial assistance had to be for the purpose of providing employment. Such a determination was unnecessary to the opinion.

Where, however, the language of a statute is ambiguous or leads to absurd results, a court is free to consult the legislative history and discern the true intent of Congress. *American Trucking Assn, Inc. v. I.C.C.*, 659 F.2d 452, 459 (5th Cir. 1981); *Glenn v. United States*, 571 F.2d 270, 271 (5th Cir. 1978).

Section 504 of the Rehabilitation Act specifically prohibits discrimination against qualified handicapped people in "any program or activity receiving Federal assistance .... 29 U.S.C.A. § 794. On its face, therefore, the Section applies to programs receiving federal financial aid of any kind. Moreover, nothing in the language of the statute indicates that it was intended to reach only those programs receiving federal financial assistance for the primary purpose of providing employment.[7] Because the statute is unambiguous and does not lead to absurd results, we would normally pretermit our analysis here. Nonetheless, for purposes of clarification and in light of authority to the contrary, *United States v. Cabrini Medical Center, supra; Carmi v. Metropolitan St. Louis Sewer District, supra,* we turn to the legislative history to determine whether Congress intended to restrict application of the Rehabilitation Act to those programs receiving federal financial assistance for the primary purpose of employment. *See Watt v. Alaska,* 451 U.S. 259, 266, 101 S.Ct. 1673, 1677, 68 L.Ed.2d 80 (1981).

Congress enacted the Rehabilitation Act in 1973. Pub.L.No. 93–112, 87 Stat. 355 (1973). Neither the House nor the Senate reports contain even a scintilla of evidence indicating that Congress intended to incorporate Section 604 of Title VI into the Rehabilitation Act and limit the applicability of Section 504 to programs receiving federal financial assistance for the primary purpose of providing employment. The legislative history to Section 504 does not even mention Title VI of the Civil Rights Act. Instead, the reports merely reiterate that Section 504 applies to any program receiving federal financial assistance.[8]

The Rehabilitation Act was amended in 1974. Pub.L.No. 93–516, 88 Stat. 1619 (1974). Congress noted obliquely in the legislative history to the amendments that Section 504 was "patterned" after Section 601 of Title VI. S.Rep.No. 1297, 93rd Cong., 2d Sess. (1974), *reprinted in* U.S.Code Cong. & Ad.News 6373, 6390. At least one circuit has relied upon this lone reference as indicia that Congress intended to incorporate wholesale the provisions of Title VI, including Section 604, into the Rehabilitation Act. *Carmi v. Metropolitan St. Louis Sewer District, supra,* 620 F.2d 675. We find such an interpretation reads far too much into an isolated reference in the legislative history.

The reference does not indicate an intent to incorporate the strictures of Title VI into the Rehabilitation Act. Viewed in context, the reference constitutes nothing more than acknowledgement that Section 504 was written with the same sweeping language found in Section 601 of Title VI. In fact, the legislative history to the 1974 amendments is replete with notations indicating

---

7. Similarly, a plain reading of Section 604 of the Civil Rights Act of 1964 would appear to render it inapplicable to private suits under the Rehabilitation Act. Section 604 expressly applies only to federal agencies and departments. Thus a federal agency or department must establish that the employer received federal financial assistance for the purpose of employment in order to maintain an action under Title VI. Section 604 does not, on its face, apply to private individuals. Accordingly, even were Section 604 deemed applicable to suits under the Rehabilitation Act, it would seemingly apply only to suits brought by federal agencies or departments and not suits brought by private individuals. *Carmi v. Metropolitan St. Louis Sewer District, supra,* 620 F.2d at 678 (McMilli-

an, J., concurring); *Hart v. County of Alameda,* 485 F.Supp. 66, 72 (N.D.Cal.1979).

8. For example, the House Report explained the significance of Section 504 by stating that:

Section [504] provides that no otherwise qualified handicapped individual will be discriminated against or excluded from participation in or benefits from any program or activity receiving Federal assistance.

H.R.No. 244, 93rd Cong., 1st Sess. 35 (1973), U.S.Code Cong. & Ad.News, 1973, p. 2076. The Senate Report contained substantially identical language. S.Rep.No. 318, 93rd Cong., 1st Sess. 50, 70 (1973), U.S.Code Cong. & Ad. News 1973, 2076, 2143.

that Section 504 was intended to encompass programs receiving federal financial assistance of any kind, not just those programs receiving federal financial assistance for the purpose of providing employment.[9] Furthermore, had Congress intended to incorporate wholesale the provisions of Title VI into the Rehabilitation Act, the legislative body would have had no reason to amend the Act in 1978 and provide that the "remedies, procedures, and rights" found in Title VI were applicable to suits under Section 504 of the Rehabilitation Act.[10]

Finally, we note that the Rehabilitation Act is remedial in nature. *Carmi v. Metropolitan St. Louis Sewer District, supra,* 620 F.2d at 677 (McMillian, J., concurring). As a general matter, courts eschew narrow interpretations of remedial statutes. Instead, remedial statutes are normally accorded broad construction in order to effectuate their purpose. *Peyton v. Rowe,* 391 U.S. 54, 65, 88 S.Ct. 1549, 1555, 20 L.Ed.2d 426 (1968); *Ayers v. Wolfinbarger,* 491 F.2d 8, 16 (5th Cir. 1974). Because the legislative

history is devoid of language demonstrating that Congress intended Section 604 of Title VI to apply to suits under the Rehabilitation Act, the remedial nature of the Rehabilitation Act mandates that we reject such an interpretation.

### IV. *Section 505 of the Rehabilitation Act*

In 1978, Congress again amended the Rehabilitation Act and added Section 505. Pub.L.No. 95–602, 92 Stat. 2955 (1978).[11] The section provides that the "remedies, procedures, and rights" of an aggrieved party are found in Title VI of the Civil Rights Act of 1964. Significantly, Congress did not simply state that suits under Section 504 of the Rehabilitation Act were controlled by Title VI. Instead, Congress made clear that only the "remedies, procedures, and rights" of Title VI were incorporated into the Rehabilitation Act. Section 604, as a substantive restriction on standing, does not constitute a right, remedy or procedure.[12] Thus, under the plain mean-

---

**9.** The Senate Report made clear the broad reach of Section 504. "Section 504 was enacted to prevent discrimination against all handicapped individuals, regardless of their need for, or ability to benefit from, vocational rehabilitation services, *in relation to Federal assistance in employment, housing, transportation, education, health services, or any other Federally aided program.*" (Emphasis added.) S.Rep.No. 1297, 93rd Cong., 2d Sess. 38 (1974), *reprinted in* U.S.Code Cong. & Ad.News 6373, 6388. Similarly, the Report noted that:

The language of section 504, in following the above-cited Acts, further envisions the implementation of a compliance program which is similar to those Acts, including promulgation of regulations providing for investigation and review of *recipients of Federal financial assistance,* attempts to bring noncomplying recipients into voluntary compliance through informal efforts such as negotiation, and the imposition of sanctions against recipients who continue to discriminate against otherwise qualified handicapped persons on the basis of handicap. Such sanctions would include, where appropriate, the termination of *Federal financial assistance* to the recipient or other means otherwise authorized by law. Implementation of section 504 would also include pre-grant analysis of recipients to ensure that *Federal funds* are not initially provided to those who discriminate against handicapped individuals. (Emphasis added.)

S.Rep.No. 1297, *supra,* at 40, *reprinted in* U.S. Code Cong. & Ad.News, *supra,* at 6390.

**10.** In any event, the precise import of the statement in the legislative history that Section 504 was "patterned" after Section 601 of the Civil Rights Act of 1964 is at best unclear. Ambiguous and unclear legislative history may not be used to alter the ordinary meaning of statutory language. *Ford Motor Credit Co. v. Cenance,* 452 U.S. 155, 158 n.3, 101 S.Ct. 2239, 2241 n.3, 68 L.Ed.2d 744 (1981); *Dent v. St. Louis-San Francisco Ry. Co.,* 406 F.2d 399, 403 (5th Cir. 1969), *cert. denied,* 403 U.S. 912, 91 S.Ct. 2219, 29 L.Ed.2d 689 (1971); *League to Save Lake Tahoe, Inc. v. Trounday,* 598 F.2d 1164, 1172 (9th Cir.), *cert. denied,* 444 U.S. 943, 100 S.Ct. 299, 62 L.Ed.2d 310 (1979).

**11.** The language of Section 505 did not appear in the original House bill. The origin of the language was in the Senate and was added to the final bill at the joint conference. H.Con. R.No. 1780, 95th Cong., 2d Sess. (1978), *reprinted in* U.S.Code Cong. & Ad.News at 7404.

**12.** A "remedy" is the means employed to enforce a right or redress an injury. Black's Law Dictionary 1163 (rev. 5th ed. 1979). The term "rights" generally connotes "a power, privilege, faculty, or demand, inherent in one person and incident upon another." Black's Law Dictionary, *supra,* at 1189. Clearly, the restrictions

ing of the language in Section 505, Section 604 of the Civil Rights Act was not incorporated into the Rehabilitation Act.

Any lingering doubt concerning the correct interpretation of Section 505 is dispelled by reference to the legislative history. The legislative history makes clear that Congress intended the amendments to *expand* the remedies of handicapped individuals. *See, e.g.,* 124 Cong.Rec. S–30311 (daily ed., Sept. 20, 1978) (statement by Senator Stafford) ("The bill allows the rehabilitation program to grow and *serve more handicapped individuals* and *provide these individuals with greater opportunities to maximize their potential.*") (emphasis added); *id.* at S–155591 (daily ed., Sept. 20, 1978) (statement by Senator Cranston); *id.* at S–30303 (statements by Senator Randolph); *id.* at H–13901 (daily ed., May 16, 1978) (statements by Congressman Jeffords). We find it disingenuous to suggest that we read into an amendment intended to broaden remedies under the Act a restriction on standing.[13]

More specifically, the Conference Report to the 1978 Amendments acknowledges that the Rehabilitation Act extends to *any* recipient of federal financial assistance. H.Con.R. No. 1780, 95th Cong., 2d Sess. (1978), *reprinted in* U.S.Code Cong. & Ad. News 7375, 7404 (Section 505 insures that the "remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 would be available to any person aggrieved by any act or failure to act by *any recipient of Federal assistance ....*") (emphasis added). Furthermore, the discussion of Section 505 in the Conference Report was located in a subsection titled "Attorneys' Fees and Remedies." The title of an act or subsection can be used to help interpret an ambiguous statute. *Russ v. Wilkins*, 624 F.2d 914, 922 (9th Cir. 1980). It is reasonable to conclude that the title of this subsection indicates that Congress was adopting the section to provide benefits and remedies for an aggrieved party. On the other hand the restrictions found in Section 604 cannot be construed as either a benefit or a remedy. The explanation of the statute and the title of the subsection therefore establish that Congress did not intend to incorporate Section 604 of the Civil Rights Act into Section 504 of the Rehabilitation Act.

Finally, we note that four years after the adoption of the Rehabilitation Act in 1973, the Department of Health, Education and Welfare enacted regulations that attempted to implement the Act. *See* 45 C.F.R. Part 84. The regulations did not restrict the applicability of the Rehabilitation Act to those programs receiving federal funds for the purpose of providing employment. Instead, the regulations prohibited discrimina-

found in Section 604 of the Civil Rights Act of 1964 constitute neither a right nor a remedy under the aforementioned definitions.

Procedures prescribe methods of "enforcing rights or obtaining redress for their invasion; machinery for carrying on procedural aspects of a civil or criminal action .... As a general rule, laws which fix duties, establish rights and responsibilities among and for persons ... are 'substantive laws' ...." Black's Law Dictionary, *supra*, at 1083. By severely restricting the category of people that can maintain an action under the Rehabilitation Act, Section 604 of the Civil Rights Act of 1964 can only be viewed as a substantive limitation on the rights created by Section 504 of the Rehabilitation Act. As such, the restriction cannot be viewed as procedural.

13. Other evidence demonstrates that the 1978 amendments were intended to *expand* rather than contract the applicability of the Rehabilitation Act. As originally enacted, Section 504 did not make clear that it applied to the federal government as well as state and local governments. In fact, the Justice Department issued an opinion at the request of the Department of Health, Education and Welfare concluding that the Federal Government was exempt from the statute. The 1978 amendments specifically negated the Justice Department's interpretation by extending the Act to executive agencies and the United States Postal Service. *Prewitt v. United States Postal Service, supra*, 662 F.2d at 302. As noted by Congressman Jeffords, "[t]his amendment removes [the exemption for the federal government] and applies 504 to the Federal Government as well as State and local recipients of Federal dollars .... I think this is fair and appropriate and should go a long way toward developing a uniform and equitable national policy for elimination of discrimination." 124 Cong.Rec. H–13901 (daily ed., May 16, 1978).

tion against qualified handicapped individuals in programs and activities receiving or benefiting from *any* federal financial assistance. 45 C.F.R. § 84.2(f) & (h); § 84.4.

In enacting Section 505, the Senate report specifically noted the existence of the HEW regulations. Moreover, the report noted that Section 505 did nothing more than codify the rights, remedies and procedures found in the HEW regulations.

> *It is the committee's understanding that the regulations promulgated by the Department of Health, Education, and Welfare with respect to procedures, remedies, and rights under Section 504 conform with those promulgated under Title VI. Thus, [Section 505] codifies existing practice as a specific statutory requirement.* (Emphasis added.)

S.Rep.No. 890, 95th Cong., 2d Sess. 19 (1978), U.S.Code Cong. & Ad.News, 1978 p. 7312. Thus Section 505 was intended to encompass only those remedies, procedures and rights of Title VI found in the HEW regulations. Since the HEW regulations did not utilize or mention the restrictions found in Section 604 of Title VI, Congress

obviously did not intend Section 505 to incorporate such a restriction into the Rehabilitation Act.[14]

## V. Conclusion

 Upon consideration of the issue, we have uncovered no evidence demonstrating that Congress intended to incorporate the limitations of Section 601 of Title VI into the Rehabilitation Act. We therefore effectuate the plain meaning of the language in Sections 504 and 505 and conclude that a plaintiff need not establish that the employer received federal financial assistance for the primary purpose of providing employment in order to have standing. Instead, a plaintiff need only show that the employer received federal financial assistance and that he/she was an intended beneficiary of the assistance. *Doyle v. Univ. of Ala.-Birm., supra; Brown v. Sibley, supra.* Moreover, our determination leads to the ineluctable conclusion that the DOT regulations were written in a manner consistent with the Rehabilitation Act and were therefore valid.[15]

---

**14.** In *Trageser v. Libbie Rehab. Cntr. Inc., supra*, 590 F.2d 87, the Fourth Circuit relied upon the language of Section 505 to conclude that Congress intended to incorporate the restrictions of Section 604 into the Rehabilitation Act. We note, however, that the opinion suffers from a number of deficiencies that render its analysis suspect. The *Trageser* court made no attempt to determine whether the restrictions found in Section 604 constituted a right, remedy or procedure within the meaning of Section 505. Moreover, the opinion failed to examine the legislative history of Section 505. As a result, the opinion did not provide any support from the legislative history for its interpretation. In fact, as we have shown, the legislative history indicates a contrary intent. Finally, without providing any supporting authority, the *Trageser* court concluded that Section 604 was intended to apply to actions by private parties. As noted, however, Section 604 states on its face that it applies only to actions brought by federal departments and agencies. *See* note 7, *supra*. Accordingly, we find the reasoning of the opinion decidedly unpersuasive and decline to follow it.

**15.** The DOT regulations prohibit discrimination against qualified handicapped individuals in any program or activity receiving or benefiting from federal financial assistance. 49 C.F.R.

§ 27.7. The regulations define federal financial assistance as:

> ... any grant, loan, contract (other than a procurement contract or a contract of insurance or guaranty), or any other arrangement by which the Department provides or otherwise makes available assistance in the form of:
>
> (a) Funds;
> (b) Services of Federal personnel; or
> (c) Real or personal property or any interest in, or use of such property, including:
> (1) Transfers or leases of such property for less than fair market value or for reduced consideration; and
> (2) Proceeds from a subsequent transfer or lease of such property if the Federal share of its fair market value is not returned to the Federal Government.

49 C.F.R. § 27.5. Thus, the regulations are not limited to employers receiving federal aid for purposes of employment. Instead, they extend to employers receiving or benefiting from any kind of federal financial assistance.

Other federal agencies have adopted similar or identical regulations. *See* 45 C.F.R. Part 85 (Department of Health & Human Services); 13 C.F.R. Part 113 (Small Business Administration); 31 C.F.R. Part 51 (Department of the Treasury).

We of course intimate no position on the merits of plaintiff's claim. Instead, we simply hold that the district court applied the incorrect standard in determining plaintiff's standing to maintain the suit. Accordingly, the decision of the district court is RE-VERSED and REMANDED for proceedings not inconsistent with this opinion.