Michael W. BASS, Plaintiff,

v.

BOARD OF COUNTY COMMISSIONERS OF ORANGE COUNTY, FLORIDA, Defendant.

No. 97–308–CIV–ORL–18C.

United States District Court, M.D. Florida.

March 22, 1999.

Joseph Egan, Jr., Egan, Lev & Siwica, Orlando, FL, for plaintiff.

Kevin W. Shaughnessy, John P. Dempsey, Akerman, Senterfitt & Eidson, P.A., Orlando, FL, for defendant.

## ORDER

G. KENDALL SHARP, District Judge.

Plaintiff Michael W. Bass brings the instant action against the defendant Board of County Commissioners of Orange County, Florida ("the County") alleging that the defendant's failure to hire him as a Training Instructor constitutes race discrimination in violation of Title VI and VII of the Civil Rights Act of 1964, codified at 42 U.S.C. § 2000d and § 2000e (West 1997) ("Title VI" and "Title VII" respectively); 42 U.S.C. §§ 1981 and 1983; the Florida Civil Rights Act of 1992, § 760.11 Florida Statutes ("FCRA"); and the Equal Protection Clause of the United States Constitution, and violates the Florida's Veterans' Preference Act, §§ 295.07, 295.085, Florida Statutes. The plaintiff also claims that he was retaliated against after the 1995 reorganization in violation of Title VII, 42 U.S.C. § 1981, the FCRA, and his constitutional rights under the First Amendment. The case is presently before the court on the defendant's motion for summary judgment to which the plaintiff has responded in opposition. Following a review of the case file and relevant law, the court finds that the defendant's motion for summary judgment should be granted.

## I. Factual Background

The Orange County Fire Rescue Division ("OCFRD") is a special assessment district, the funding of which is derived from a millage assessment set by the County. In July of 1995, the Board of County Commissioners voted against increasing the millage assessment to support the OCFRD's proposed budget for fiscal year 1995–96. Faced with a budget deficit, OCFRD reorganized itself. As part of that reorganization, a task force was assembled to find ways to save money in the operation of the Administration Department. The Training Bureau was one of the areas within the Administration Department that was reviewed by the task force. Prior to the reorganization, the OCFRD was organized into five battalions with four Training Captains. Those Training Captains were John Russell (black male), Donna Reed (white female), Gina McCollum (white female), and the plaintiff (white male). The task force recommended that the four Training Captain positions be eliminated and replaced by three Lieutenant Training Instructors.

As part of the restructuring of management level positions, all personnel in the Assistant Chief, Battalion Chief, Commander, and Captain ranks were laid off effective October 12, 1995. These individuals were required to apply for the newly created positions, including the Training Instructor positions.

The County's Human Resources Department screened all applications to ensure that the applicants met the minimum qualifications for the position. Thereafter, 13 applicants, including the plaintiff, were interviewed for the three Training Instructor positions. A Performance Based Interview ("PBI") was conducted by a three member panel consisting of Charles Middleton, Ray Valle, and Betty Meeks. Each applicant was asked the same set of questions and the panel scored the candidates' responses. In a ranking of the candidates, the plaintiff placed ninth out of all the applicants and seventh out of the white applicants. The three top scoring candidates were recommended for the position.[1] The successful candidates were Donna Reed (white female), Gina McCollum (white female), and Vince Preston (black male).

The plaintiff and the firefighters' union both filed grievances regarding the 1995 reorganization. In December of 1995, as part of the settlement of the grievances, the plaintiff was given the rank of Training

---

1. The second highest scoring applicant, Dan Kucik (white male), was selected for and accepted the higher ranking position of Group Supervisor. Therefore, the applicants who were recommended for the Training Instructor position scored first, third, and fourth on the PBI.

Instructor. After the reorganization there were three districts (as the battalions were renamed), each with its own Training Instructor. Thus, when the plaintiff was named a Training Instructor there were no vacant districts. As a result, the plaintiff was assigned tasks outside of the functions of a Training Instructor.

In December of 1995, the plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR") alleging race discrimination and retaliation. After exhausting his administrative remedies, this present suit followed.

## II. Legal Discussion

### A. Summary Judgment Standards

Summary judgment is authorized if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); accord Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249, 106 S.Ct. 2505. "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248, 106 S.Ct. 2505.

The moving party bears the burden of proving that no genuine issue of material fact exists. See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether the moving party has satisfied the burden, the court considers all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolves all reasonable doubts against the moving party. See Anderson, 477 U.S. at 255, 106 S.Ct. 2505; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The moving party may rely solely on his pleadings to satisfy this burden. See Celotex, 477 U.S. at 323–24, 106 S.Ct. 2548; Fed.R.Civ.P. 56(c).

"[A]ll that is required [to proceed to trial] is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." Anderson, 477 U.S. at 249, 106 S.Ct. 2505 (quoting First Nat'l. Bank v. Cities Serv. Co., 391 U.S. 253, 288–89, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)). Summary judgment is mandated, however, "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322, 106 S.Ct. 2548.

### B. The Merits of Defendant's Motion

#### 1. Race Discrimination Under Title VII

The plaintiff alleges that he was discriminated against on the basis of his race in violation of Title VII when he was not selected for the Training Instructor position.[2] Title VII provides that it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e(2)(a) (West 1997). Title VII disparate treatment actions are

---

**2.** In his Complaint, the plaintiff claims that there was race discrimination in the selection of the Group Supervisors. However, the plaintiff no longer seeks relief for being denied the Group Supervisor promotion. Accordingly, judgment as a matter of law will be granted in favor of the defendant on that claim.

analyzed differently when the evidence of discrimination is circumstantial as opposed to direct.

When a discriminatory motive is inferred from circumstantial evidence, the plaintiff bears the initial burden of establishing a prima facie case of race discrimination. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–03, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981). Once the plaintiff has established a prima facie case, the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817; *Burdine,* 450 U.S. at 253, 101 S.Ct. 1089. If the defendant articulates such a reason, then the plaintiff has the opportunity to prove by a preponderance of the evidence that the defendant's legitimate reason was merely a pretext for its discriminatory action. *See McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. 1817.

■ In a case where discrimination is established by direct evidence, however, the Eleventh Circuit has held that a defendant may not rely on a *McDonnell Douglas* rebuttal. *See Thompkins v. Morris Brown College,* 752 F.2d 558, 563 (11th Cir.1985). Once the plaintiff produces credible, direct evidence that the defendant acted with a discriminatory motive, "the burden shifts to the defendant to prove by a preponderance of the evidence that the same employment decision would have been reached even absent the discriminatory intent." *Lewis v. Smith,* 731 F.2d 1535, 1538–39 (11th Cir.1984). In a case based on direct evidence, the defendant's burden is one of persuasion and not merely production. *See Hill v. Metropolitan Atlanta Rapid Transit Authority,* 841 F.2d 1533, 1539 (11th Cir.1988).

■ The plaintiff attempts to show one instance of direct evidence discrimination. In his "Declaration," the plaintiff states that Chief Moody told the plaintiff that "the County 'will continue' to promote based on color." (Pl. Dec., ¶ 36). This statement does not constitute direct evidence of discrimination for several reasons. First, the plaintiff has not shown nor does he even allege that Chief Moody was involved in the hiring of the Training Instructors. *See Standard v. A.B.E.L. Services, Inc.,* 161 F.3d 1318, 1330 (11th Cir. 1998) ("[R]emarks by non-decisionmakers or remarks unrelated to the decisionmaking process itself are not direct evidence of discrimination."). Second, the plaintiff's argument in his brief that the statement is direct evidence of discrimination somewhat contradicts his deposition testimony. In his deposition the plaintiff stated that he could not recall if anyone ever told him that he was not selected for the Training Instructor position because of his race. (Pl.Depo., p. 66). Third, the plaintiff testified in his deposition that he could not recall exactly what Chief Moody said, but that was what he interpreted him as saying. (Pl.Depo, pp. 85–86). At best, the comment is evidence of the atmosphere in which the selection decisions were made, which makes it circumstantial. Therefore, because the plaintiff has not presented direct evidence, the court will analyze this case under the *McDonnell Douglas* circumstantial evidence standards.

The defendant does not dispute that the plaintiff can establish a prima facie case of race discrimination, but it contends that it had a legitimate non-discriminatory reason for not selecting the plaintiff for a Training Instructor position which the plaintiff cannot show was pretext for intentional race discrimination. The defendant states that the plaintiff was not selected as a Training Instructor because, based on his performance during the PBI, the panel did not believe that he was among the most qualified candidates for the position. (Middleton Depo., p. 59; Valle Depo., p. 24; Meeks Aff., ¶ 6). The court finds this to be a legitimate non-discriminatory reason for not selecting the plaintiff for the position. *See Fischbach v. District of Colum-*

*bia Dept. of Corrections,* 86 F.3d 1180, 1182 (D.C.Cir.1996) (stating that it was reasonable and non-discriminatory for the employer to select an applicant based solely on an interview score); *Ramos v. Roche Products, Inc.,* 936 F.2d 43, 47 (1st Cir. 1991) (finding that the employer's stated reason that it believed it had hired the better qualified candidate was sufficient to satisfy its initial burden of rebutting the prima facie case); *Sandhu v. Commonwealth of Virginia Dep't of Conservation & Recreation,* 874 F.Supp. 122, 127 (E.D.Va.1995) ("[T]he personal interview is often the determinative factor in many hiring positions.") (citation omitted); *Morton v. City Sch. Dist. of the City of New York,* 742 F.Supp. 145, 148 (S.D.N.Y.1990) ("Interviews are a rational and accepted means of assessing an applicant's qualifications.")

■ As the defendant has articulated a legitimate non-discriminatory reason for its decision, the burden shifts back the plaintiff to show that the proffered reason was merely a pretext for race discrimination. As evidence of pretext, the plaintiff claims that: (1) the PBI process was tainted; (2) Preston was not qualified for the position; (3) the County's Affirmative Action Plan was used in the selection process and there was political pressure to hire minorities; (4) Chief Moody stated that an applicant's "color" was used in the promotion process; and (5) the County failed to follow its procedures in the selection of the Training Instructors.

The plaintiff claims that the PBI process was tainted because all three evaluators were minorities, two of the three evaluators supported affirmative action, the evaluators were not trained in the interview process, and they were not given objective guidelines for rating the candidates. However, these allegations are either not supported by the evidence or do not raise an inference that the plaintiff was not selected because of his race. There is no evidence that the evaluators were even aware that the OCFRD used an affirmative action plan to encourage minority hir-

ing or promotions during the time when the Training Instructors were selected. (Middleton Depo., pp. 42–43; Meeks Depo., pp. 8–10). Furthermore, the evidence shows that the evaluators were trained in the PBI process, they asked each candidate the same prepared list of questions, and instructions were given on how to rate each candidate. (Middleton Depo. pp. 17–18, Ex. 2, 3; Meeks Depo. p. 13; Valle Depo. p. 19).

The plaintiff also claims that the candidates were not treated equally during the PBI process. He alleges that Middleton interrupted him when he was answering questions, cut him off in the middle of responses, and only gave him 25 minutes to do his interview whereas other candidates where given 45 minutes. However, assuming this did occur, there is no evidence that these actions were the result of the plaintiff's race. In fact, the plaintiff testified in his deposition that his treatment by Middleton could have been the result of a personality conflict. (Pl.Depo. p. 56).

The strongest evidence that the PBI process did not discriminate against the plaintiff is the fact that the three highest ranking candidates were white. The panel decided before the interviews that the three highest scoring candidates would be recommended for the position. (Middleton Depo. pp. 55–56). If Dan Kucik (white male), the candidate with the second highest score, had not accepted the position of Group Supervisor, all of the Training Instructors would have been white. (Middleton Aff. ¶ 7, Ex. 1). The plaintiff has presented no evidence to dispute this result. Additionally, John Russell, the only black Training Captain before the reorganization, did not score well on the PBI, and ultimately ranked eighth. (Middleton Aff., Ex. 1).

Second, the plaintiff claims that Vince Preston, the only successful black candidate, was not qualified for the position. However, it is not enough for the plaintiff to show that the County misjudged the

qualifications of Preston. *See Randle v. City of Aurora,* 69 F.3d 441, 455 (10th Cir.1995) ("[J]ust because the reasoning relied upon for a certain action is mistaken does not mean that the reason is pretextual."). The plaintiff must instead raise a question of fact as to whether racial discrimination was the real reason he was not selected for the position. *See McCarthney v. Griffin–Spalding County Bd. of Educ.,* 791 F.2d 1549, 1552 (11th Cir.1986) ("Title VII does not require an employer to hire or promote the most qualified applicant; it only requires that the employer make such decisions without regard to race, sex, religion, color, or national origin."). The defendant maintains that the candidates were evaluated solely on how well they performed in the interview. Therefore, the relevant question at this stage is whether the interview panel honestly believed that Preston was more qualified than the plaintiff. *See Moore v. Sears, Roebuck & Co.,* 683 F.2d 1321, 1323 n. 4 (11th Cir.1982). Valle and Middleton testified in their depositions that the plaintiff did not perform well in his interview (Middleton Depo. p. 59; Valle Depo. p. 24) and Meeks stated in her affidavit that he was not among the most qualified candidates (Meeks Aff. ¶ 6). In his deposition, the plaintiff admitted that he did not perform well in the interview. (Pl.Depo. p. 55). The plaintiff has not presented evidence casting doubt on the genuineness of the panel members' belief concerning his or Preston's performance on the PBI. While there is evidence that Preston misstated his qualifications on his application, there is no evidence that the Human Resources office or the panel members were aware that he did not meet the minimum qualifications.

 Third, the plaintiff argues that the County's Affirmative Action Plan is evidence that the plaintiff's race played a part in the defendant's failure to select him for the Training Instructor position. However, the mere existence of an affirmative action plan does not show discrimination in the selection of the Training Instructors. *See McKie v. Miller Brewing Co.,* 1992 WL 150160 at * 4 (M.D.Ga.) (citing *Christensen v. Equitable Life Assurance Soc'y,* 767 F.2d 340, 343 (7th Cir.1985)). As discussed above, there is no evidence that the panel members considered the defendant's Affirmative Action Plan or its policies in selecting the Training Instructors. (Middleton Depo. p. 43; Meeks Depo. pp. 8–10). Furthermore, there is no evidence that they felt any "political pressure" to hire minorities. The plaintiff testified in his deposition that he did not have any evidence suggesting that the defendant's Affirmative Action Plan applied to the selection of the Training Instructors. (Pl.Depo. p. 169). All that has been shown is that an affirmative action plan existed, which is insufficient to defeat a motion for summary judgment.[3]

Fourth, the plaintiff offers Chief Moody's statement that the County would continue to promote based on color. As discussed above, however, the plaintiff testified in his deposition that he could not remember specifically what was said, but that was what he interpreted Moody as saying. (Pl.Depo. pp. 86–87). Furthermore, the plaintiff states that this discussion occurred in the presence of other firefighters, but he offers no corroborating affidavits or testimony. He has presented no evidence other than his own deposition and affidavit to support his allegation. *See Weeks v. Samsung Heavy Ind. Co.,* 126 F.3d 926, 939 (7th Cir.1997) ("a plaintiff's own uncorroborated testimony is insufficient to defeat a motion for summary judgment."). The plaintiff also does not suggest that Moody played any part in the selection of the Training Instructors or that his views on the County's promotion

---

**3.** In his brief, the plaintiff argues that the County's Affirmative Action Plan is unconstitutional and a violation of his equal protection rights. However, the plaintiff has not shown that the Affirmative Action Plan was used in the selection of the Training Instructors. Therefore, he cannot succeed on his equal protection claim.

policies were shared by the panel members. Therefore, even if Moody's statement would be admissible at trial, standing alone it does not support an inference that the plaintiff was discriminated against because of his race.

■ Lastly, the plaintiff argues that the County's failure to follow its own procedures in the selection of the Training Instructors is evidence of discrimination. The plaintiff claims that the reorganization did not comply with the union contract which mandated that a reduction in force be carried out according to seniority. The plaintiff also argues that the selection of the Training Instructors was supposed to be based on a number of factors, rather than just the PBI score. However, even if the plaintiff's claims are true, a deviation from policy, without more, does not constitute evidence of discrimination. *See Randle v. City of Aurora,* 69 F.3d 441, 454 (10th Cir.1995) ("The mere fact that an employer failed to follow its own internal procedures does not necessarily suggest that the employer was motivated by illegal discriminatory intent ...."); *Nieves v. Metropolitan Dade County,* 598 F.Supp. 955, 963 (S.D.Fla.1984) (finding that a violation of the employer's rules does not give rise to Title VII liability where the employer based its decision on the successful candidate's qualifications and not the plaintiff's race). There is no evidence that the alleged deviations from procedure were not applied equally to all candidates. The plaintiff also suggests that he was treated differently than other candidates in that he was interrupted when he was answering questions and he was given less interview time. However, these allegations are un-

substantiated and there is no evidence that such actions were the result of the plaintiff's race rather than a personality conflict with Middleton.

■ The plaintiff's own deposition testimony suggests that he believes his gender may have been the reason he was not selected for a Training Instructor position. In his deposition, defendant's counsel asked the plaintiff if he would think race was a factor if Gina McCollum (white female), Dan Kucik (white male), and Vince Preston (black male) had been chosen as the Training Instructors. The plaintiff responded that in such a case, he would not believe race to be a factor. Therefore, if the racial make-up of the candidates stayed the same (two whites and one black) but the gender was changed (substituting a white male for a white female), the plaintiff would not find race to be a factor. This testimony weighs against a finding of race discrimination. Therefore, the court finds that the plaintiff has offered no evidence connecting the defendant's failure to select him for a Training Instructor position with racial bias. Because the plaintiff has failed to rebut the defendant's legitimate nondiscriminatory reason for its actions, summary judgment will be granted on the plaintiff's Title VII race discrimination claim.[4]

### 2. Title VI

■ The plaintiff claims that the County's failure to select him for a Training Instructor position was race discrimination in violation of Title VI of the Civil Rights Act of 1964. Section 601 of the Civil Rights Act (Title VI) provides that:

---

4. Because summary judgment is appropriate on plaintiff's Title VII claim, summary judgment will also be granted as to plaintiff's § 1981, § 1983, and FCRA claims because those claims are analyzed under the same standards as Title VII. *See Patterson v. McLean Credit Union,* 491 U.S. 164, 185–87, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989) (finding that the *McDonnell Douglas* framework for proving intentional race discrimination is applicable to § 1981 claims); *Cross v. Alabama,*

49 F.3d 1490, 1508 (11th Cir.1995) (holding that where § 1983 is used as a parallel remedy for a violation of Title VII, the elements of the causes of action are the same.); *Harper v. Blockbuster Entertainment Corp.,* 139 F.3d 1385, 1387 (11th Cir.1998) ("[D]ecisions construing Title VII are applicable when considering claims under the Florida Civil Rights Act, because the Florida Act was patterned after Title VII.").

No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

42 U.S.C.A. § 2000d. Congress, however, limited the enforcement of Section 601 to those situations in which "a primary objective of the Federal financial assistance is to provide employment." Section 604 of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000d–3. "Thus in order to bring suit under Title VI, an employer must receive federal funds for the purposes of providing employment." *Jones v. Metropolitan Atlanta Rapid Transit Auth.*, 681 F.2d 1376, 1378 (11th Cir.1982). Although the plaintiff has presented some evidence that the County received federal funds, there is no evidence that the purpose of those funds was to provide employment. Accordingly, judgment as a matter of law will be granted in favor of the defendant as to the plaintiff's Title VI claim.

### 3. Retaliation

After learning that he was not selected for a Training Instructor position, the plaintiff filed a union grievance. In December of 1995, the grievance was settled by the County and the plaintiff was given the rank of Training Instructor. The plaintiff filed a Charge of Discrimination with the EEOC on December 19, 1995 and the County was notified of the charge on January 10, 1996. (Pl.Depo.Ex. 10, 11). The plaintiff claims that after he was given the rank of Training Instructor, he was retaliated against for making informal complaints of race discrimination to Moody and filing a formal Charge of Discrimination with the EEOC. The alleged retaliatory conduct includes the County's failure to assign him training duties and provide him with a work station or computer; the assignment of menial tasks; denial of opportunities enjoyed by other Training Instructors; and a requirement that he take tests not required of other Training Instructors.

The plaintiff claims that a statement made to him by Jacquelyn Clark, the Manager of the Human Resources Department, is direct evidence of retaliation. In his Declaration, the plaintiff states that Clark told him in 1997 that if he had not filed the union grievance or pursued legal action against the County, he could still be an engineer in combat. (Pl.Dec., ¶ 50). The plaintiff's uncorroborated statement, however, is not relevant to the alleged retaliation he experienced after he was given the rank of Training Instructor. The defendant does not dispute that he was given the rank of Training Instructor in response to the settlement of the union grievance. The relevant question is whether the County retaliated against the plaintiff for engaging in statutorily protected conduct. Therefore, because the plaintiff does not have direct evidence of retaliation, the court will analyze his claim under the *McDonnell Douglas* framework.

■ In order to establish a prima facie case of retaliation, the plaintiff must show that: (1) he engaged in statutorily protected activity; (2) the employer took an adverse action against him; and (3) a causal link exists between the protected activity and the adverse action. *See Raney v. Vinson*, 120 F.3d 1192, 1196 (11th Cir. 1997). Once the prima facie case has been established, the burden shifts to the defendant to come forward with legitimate reasons for the adverse employment action. *See id.* If the defendant proffers legitimate reasons, the burden shifts back to the plaintiff to show that the defendant's reasons are pretextual. *See id.* The County argues that summary judgment should be granted as to the retaliation claim because the plaintiff cannot satisfy the third prong of the prima facie test— the causal link. Furthermore, the defendant argues that the plaintiff cannot rebut the County's legitimate non-retaliatory reason for its actions.

■ First, the County argues that the plaintiff cannot prove a causal connec-

tion because the alleged retaliatory treatment began before the plaintiff even signed his EEOC charge and before the County was aware the charge had been filed. The plaintiff stated in his deposition that the retaliatory treatment began on or before December 18, 1995—before he signed his Charge of Discrimination and before the County received formal notice of the filing. (Pl.Depo. pp. 99, 115). Additionally, the County claims that the alleged retaliation did not increase or change in anyway after the charge was filed. The plaintiff claims, however, that he was retaliated against for making a complaint to Chief Moody on or about November 17, 1995. In order to engage in protected activity under Title VII, the employee must communicate to his employer that discrimination is occurring. *See Webb v. R & B Holding Co., Inc.,* 992 F.Supp. 1382, 1389 (S.D.Fla.1998). "It is not enough for the employee merely to complain about a certain policy or certain behavior ... and rely on the employer to infer that discrimination has occurred." *Id.* The plaintiff stated in his Declaration that he complained to Moody about the lack of qualifications of some of the persons selected for the Training Instructor positions. (Pl.Dec. ¶ 36). It is not clear from his testimony that he was charging the County with race discrimination. The statement merely suggests that he was concerned about the qualifications of Vince Preston. Therefore, his conversation with Moody was not a statutorily protected activity under Title VII.

The plaintiff also states that he made complaints of race discrimination during the union grievance process in October of 1995. The only evidence that the plaintiff offers to support his claim is the testimony of Jacquelyn Clark, the Manager of the Human Resources Department. Clark stated in her deposition that the plaintiff's union grievance was the first indication she received that he was complaining about race discrimination. (Clark Depo. p. 40). However, four questions earlier in her deposition, she testified that she could

not recall whether the plaintiff was concerned about race when he filed his grievance. (Clark Depo. p. 40). Even assuming that Clark was aware that the plaintiff had concerns about the use of race in the selection of the Training Instructors, the testimony is insufficient to raise a question of fact as to whether the plaintiff engaged in protected activity during this time period.

The plaintiff has difficulty satisfying the third prong of the prima facie test because the alleged retaliation began before the County was aware that he had filed a discrimination charge with the EEOC; his only protected activity. If the retaliation began on or before December 18, 1995, it could not have been in response to his EEOC Charge.

█ Assuming that the plaintiff can establish a prima facie case, summary judgment is warranted because the County has articulated legitimate non-retaliatory reasons for its actions which the plaintiff has failed to rebut. Before the reorganization, there were four training officers assigned to cover five battalions. After the reorganization, there were three Training Instructors assigned to cover three districts (as the battalions were renamed). Thus, when the plaintiff was given the rank of Training Instructor, there was no vacant district to which to assign him. (Pl.Depo. p. 100; Middleton Depo. p. 36). The head of the Training Bureau, Chief Willard Smith, elected not to break up the districts or assign two Training Instructors to the same district. Thus, the plaintiff was not assigned training duties on a daily basis.

The plaintiff offers no evidence to rebut this legitimate reason for the County's actions. He suggests that the reason is pretextual because he frequently assisted the other Training Instructors with their duties; he was ordered not to record the clerical work he performed; one Training Instructor had more work than she could handle, his complaints about the treatment he received were deleted; and in 1998 one

of the Training Instructors was transferred, creating a vacancy which was never filled. However, he does not cite to any evidence in the record to support his claims other than his own unsubstantiated allegations in his Declaration. This is insufficient to defeat a motion for summary judgment. *See Rose–Maston v. NME Hospitals, Inc.,* 133 F.3d 1104, 1109 (8th Cir.1998) (stating that plaintiff could not show pretext where the only factual evidence offered was her own unsubstantiated allegations in her affidavit); *Slowiak v. Land O'Lakes, Inc.,* 987 F.2d 1293, 1295 (7th Cir.1993) ("[S]elf-serving affidavits without factual support in the record will not defeat a motion for summary judgment."). Therefore, because the plaintiff has offered no evidence to show that the defendant's proffered legitimate reason for its actions was not what actually motivated its conduct, summary judgment on the plaintiff's retaliation claim will be granted.[5]

*4. Entitlement to Veteran's Preference*

 The plaintiff claims that he was entitled to a preference based on his veteran's status in the lay-off decision. Section 295.07 of the Florida Statutes states that "[t]he state and political subdivisions in the state shall give preference in appointment and retention in positions of employment" to veterans. During the reorganization, the County laid off all personnel in the ranks of Assistant Chief, Battalion Chief, Commander and Captain. The plaintiff exercised the option to return to his previous position as an Engineer/paramedic when he learned that the Training Captain positions were going to be eliminated. Therefore, the County was never faced with a choice between laying off the plaintiff or a non-veteran. Because the preferences in the Florida Veterans' Preference Act did not apply in the plaintiff's situation, summary judgment will be granted as to the plaintiff's Florida Veterans' Preference Act claim.

### III. Conclusion

For all of the reasons set forth above, the court finds that the defendant proffered legitimate, nondiscriminatory reasons for not selecting the plaintiff for a Training Instructor position and not assigning him training duties on a daily basis which were not rebutted by the plaintiff. Furthermore, the court finds that the Florida Veteran's Preference Act did not apply to the plaintiff's case. There being no issue of material fact which prevents the entry of judgment, the court **GRANTS** the defendant's motion for summary judgment (Doc. 28) as to all counts in the Complaint. Accordingly, the court directs the clerk of court to enter the appropriate judgment and to close the case.

---

5. The plaintiff also alleges that he was retaliated against for activities protected under the First Amendment to the United States Constitution. However, his constitutional claims are based on the same acts of alleged retaliation in his Title VII claim. (Pl.Depo. pp. 163–65). Therefore, because the evidence is insufficient to create a triable question of fact as to his Title VII retaliation claim, his constitutional claims fail as well.